ORIGINAL

1  BOBBY A. GHAJAR (SBN 198718)
   Email: bobby.ghajar@pillsburylaw.com
2  MARCUS D. PETERSON (SBN 265339)
   Email: marcus.peterson@pillsburylaw.com
3  PILLSBURY WINTHROP SHAW PITTMAN LLP
   725 South Figueroa Street, Suite 2800
4  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
5  Facsimile No.: (213) 629-1033

6  Attorneys for Plaintiff
   OPTIVER AUSTRALIA PTY LTD. & ANOR.
7

**Filed**

OCT 0 9 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8                UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 OPTIVER AUSTRALIA PTY LTD. &          CV 12 8 0242
   ANOR.                        Case No.
12                                                  EJD
                                             MISC.
13              Plaintiff,       DECLARATION OF JAMES      PSG
                                 LAWRENCE IN SUPPORT OF
14 vs.                           OPTIVER'S REQUEST FOR
                                 JUDICIAL ASSISTANCE
15 TIBRA TRADING PTY LTD. & ORS.,

16              Defendant.

17

18

19      I, James Lawrence, Solicitor, declare as follows:

20      1.      I am employed as a Senior Associate of the Australian law firm King &

21 Wood Mallesons ("**KWM**"), solicitors for the applicants in court proceedings before the

22 Federal Court of Australia.  Subject to the supervision of the solicitor on the record for the

23 applicants, Maurice Gonsalves, I have day to day carriage of this matter.  The matters set

24 forth in this declaration are based upon my personal knowledge, except where otherwise

25 indicated, and if called as a witness I could and would testify competently thereto.  I make

26 this declaration in support of Optiver's Request for Judicial Assistance.

27

28



- 1 -          DECLARATION OF JAMES LAWRENCE IN
              SUPPORT OF OPTIVER'S REQUEST FOR JUDICIAL
                              ASSISTANCE
                              Case No.

**Background of the Proceedings**

2.    The proceedings are entitled Optiver Australia Pty Ltd & Anor v Tibra Trading Pty Ltd & Ors, NSD 681 of 2009.  The proceedings were commenced in the New South Wales District Registry of the Federal Court of Australia on 8 July 2009.

3.    The applicants in these proceedings, and the petitioners on this motion, are Optiver Australia Pty Ltd ("**Optiver**") and Optiver Trading Pty Ltd.  The first applicant, Optiver, conducts a proprietary arbitrage business on markets including the Australian Stock Exchange (ASX) and the Sydney Futures Exchange (SFE).  It is an official "market maker" on the ASX, SFE and other international exchanges.

4.    The respondents in these proceedings are Tibra Trading Pty Ltd ("**Tibra**"), Tibra Capital Pty Ltd, Tibra Investment Management Ltd, Tibra Global Services Pty Ltd (together, the "**Tibra companies**"), Mr. Dinesh Bhandari, Mr. Glenn Williamson, Mr. Timothy Berry, Mr. Andrew King, Mr. Kinsey Cotton, Mr. Martin Nickolas and Mr. Nicholas Begg.

5.    The first respondent, Tibra, operates a proprietary arbitrage trading business in direct competition to Optiver.  Each of the personal respondents was an employee of Optiver and, between November 2005 and November 2006, each left the employment of Optiver and established and/or became an employee or shareholder of one or more of the Tibra companies.

6.    The proceedings concern a suite of computer programs designed, developed and written by employees of Optiver between 2003 and 2006 for the purposes of providing a custom auto-trading system on multiple markets (the "**Optiver source code**").

7.    The applicants allege that the respondents copied and used Optiver's source code, which embodies its confidential information and copyright works, to create their own computer programs for use in their own auto-trading business (the "**Tibra source code**"). In addition, the applicants allege that certain of the individual respondents were actively involved, during their employment with Optiver, in establishing the Tibra companies as a competitor to Optiver in breach of their fiduciary and/or contractual obligations to Optiver.

8.      Accordingly, the proceedings concern allegations of copyright infringement, breach of confidence, breach of contract, inducing breach of contract and breach of fiduciary duties against the respondents.

9.      Prior to commencing the proceedings, Optiver sought preliminary discovery against certain of the respondents in June 2007. In February 2009 an order for preliminary discovery was made and the respondents gave categorized preliminary discovery, an analysis of which formed the basis for the commencement of the present proceedings in the Federal Court of Australia. Further discovery was subsequently ordered and made by the respondents both in respect of the preliminary discovery proceedings and in the current proceedings.

10.     The discovery given in the main proceedings was found by the Court to be inadequate and an order for further discovery was made in June 2012. Annexed to this declaration and marked **Exhibit 1** is a copy of the orders made by the Court on 14 June 2012. Annexed to this declaration and marked **Exhibit 2** is a copy of the judgment of the Court dated 14 June 2012.

**Basis of application for subpoena to Google, Inc.**

11.     Documents discovered by the respondents indicate that several of the individual respondents, and several other key employees of the Tibra companies, had the following "Gmail" accounts with Google, Inc. from November 2005 onwards:

    a.   campbellnorwood@gmail.com;

    b.   christianking81@gmail.com;

    c.   eurokang@gmail.com;

    d.   kingos@gmail.com;

    e.   nickbegg@gmail.com;

    f.   raska27@gmail.com;

    g.   roohif@gmail.com; and

    h.   rottengarabaldi@gmail.com.

1      12.     The email account mentioned at 11(a) is that of Mr. Campbell Terrence

2    Norwood, a director of three of the Tibra companies.  The email account mentioned at

3    11(b) is that of Mr. Christian James King, a former director of three of the Tibra companies.

4    Neither Mr. Norwood nor Mr. Christian King are named respondents to the proceedings.

5      13.     The email accounts mentioned at 11(c) and 11(d) above are those of Mr.

6    Andrew King, the eighth respondent.  The email account mentioned at 11(e) is that of Mr.

7    Nicholas Begg, the eleventh respondent.  The email account mentioned at 11(f) is that of

8    Mr. Timothy Berry, the seventh respondent.  The email account mentioned at 11(g) is that

9    of Mr. Glenn Williamson, the sixth respondent.  The email account mentioned at 11(h) is

10    that of Mr. Kinsey Cotton, the ninth respondent.  Annexed to this declaration and marked

11    **Exhibit 3** are copies of emails discovered by the Respondents in the proceedings which

12    provide evidence of the existence of these email accounts.

13      14.     The applicants seek the proposed subpoena to determine certain information

14    about the identified Gmail accounts, including what emails, email attachments or Google

15    Talk messages were sent or received by those accounts:

16            a.   while the individual respondents were still employed by Optiver;

17            b.   while the individual respondents and other key employees of the Tibra

18                 companies were involved in establishing, or were working for, the Tibra

19                 companies; and

20            c.   while the preliminary discovery and the current proceedings were on

21                 foot.

22      15.     This information is potentially of critical importance to the case because the

23    Respondents' discovery has been grossly inadequate. In particular, the Respondents have

24    discovered relatively few documents from the critical period June-November 2006 when

25    they were setting up Tibra and developing the Tibra source code. Furthermore, there is

26    evidence that certain of the individual respondents destroyed evidence in the lead-up to

27    both the preliminary discovery proceedings and the current proceedings.

28

16.     For example, despite the respondents' evidence that development of the Tibra source code began in June 2006, no versions of the source code repository prior to 5 September 2006 were produced to the applicants in the preliminary discovery.  Discovery produced by the respondents themselves demonstrate that this is because all versions of the Tibra source code repository in existence as at 5 September 2006, including the main "master" repository as well as "local" copies on individual developers' computers, were either deleted or "overwritten" (see paragraph 19 below).

17.     When the applicants sought an order in July 2009 to inspect the computers of three of the individual respondents in an effort to find versions of the Tibra source code prior to 5 September 2006, the respondents' solicitors notified the applicants' solicitors that the relevant computers had either been disposed of in a rubbish bin (despite preliminary discovery proceedings being on foot) or had been given away.  A copy of the letter from the respondents' solicitors is annexed to this declaration and marked **Exhibit 4**.

18.     Subsequently, on 22 December 2009, the applicants' solicitors received an unprompted letter from the respondents' solicitors enclosing a copy of the first twelve versions of the Tibra source code to 31 July 2006 which they stated had been found by Mr. Glenn Williamson, the sixth respondent, on a USB stick at his home.  However, despite providing a copy of this early Tibra source code repository to the applicants' solicitors, the respondents' solicitors informed them that the actual USB stick on which it had been found had been disposed of by Mr. Williamson who had placed it in a rubbish bin at a shopping centre.  A copy of the letter from the respondents' solicitors is annexed to this declaration and marked **Exhibit 5**.

19.     In June 2012 the applicants became aware of a document prepared by Mr. Timothy Berry, the seventh respondent, entitled "Things To Do" which listed the following item for the week starting 28 August 2006 (being one week before Tibra commenced trading):

DECLARATION OF JAMES LAWRENCE IN SUPPORT
OF OPTIVER'S REQUEST FOR JUDICIAL
ASSISTANCE
Case No.

1   *Erase all emails, sent items, deleted items, Skype chats, files etc from hard*

2   *drive. Copy all existing files into new files. Fill up or blast hard drive.*

3   *Destroy all paper correspondence. Discontinue PGP.*

4   A copy of this document is annexed to this declaration and marked **Exhibit**

5   **6.**

6   20.   In light of this, the applicants seek to test whether all documents relevant to

7   the proceedings, falling within the discovery categories and involving the identified Gmail

8   accounts have been discovered by the respondents and whether any documents which may

9   have fallen within these categories were deleted from the identified Gmail accounts.

10   **Grounds on which subpoenaed documents are sought**

11   21.   The applicants seek production by Google, Inc. of three categories of

12   documents.

13   22.   The first category relates to all emails, email attachments or Google Talk

14   messages containing the words "PGP" or "Optiver" sent from or received by the identified

15   Gmail accounts between 1 January 2006 and 31 December 2007. The relevance of this

16   category is that from 12 April 2006 onwards it appears that several of the individual

17   respondents (and several other persons involved in establishing the Tibra companies) sent

18   numerous emails to one another that were encrypted with a "military grade" encryption

19   system known as PGP ("Pretty Good Privacy"). From the documents discovered by the

20   respondents, it appears that between 12 April 2006 and 20 August 2006 over 300 encrypted

21   messages were sent (the **"PGP-encrypted emails"**). By way of example, a copy of a PGP

22   encrypted email sent by one of the individual respondents from a Gmail account is annexed

23   to this declaration and marked **Exhibit 7.**

24   23.   The PGP-encrypted emails cannot be read unless they are decrypted using a

25   passkey and passphrase. On 28 June 2010 the respondents' solicitors wrote to the

26   applicants' solicitors stating that both they and their clients had attempted to locate the

27   relevant passkey and passphrase combinations to decrypt the PGP-encrypted emails but

28   without success. A copy of this letter is annexed to this declaration and marked **Exhibit 8.**

24.     However, on 6 June 2012 the applicants' solicitors received a letter from the respondents' solicitors informing them that Mr. Andrew King, the eighth respondent, had identified his passphrase.  A copy of this letter is annexed to this declaration and marked **Exhibit 9**.  The identified passphrase was then used by the applicants to attempt to decrypt the PGP-encrypted emails.  Although it was successful in decrypting a small number, the vast majority of the PGP-encrypted emails remain encrypted and cannot be read.

25.     The applicants seek production of documents falling within the first category to determine whether the PGP-encrypted emails discovered by the respondents are all of the emails, email attachments or Google Talk messages which were encrypted with PGP software and were sent to or from the identified Gmail accounts.  The specific date range sought, from 1 January 2006 through 31 December 2007, is relevant because it covers the period from when certain of the individual respondents were still employed by Optiver to when the Tibra companies were being established through to when the Tibra companies were in operation.

26.     The second category of documents sought relates to all emails, email attachments or Google Talk messages sent or received by any of the identified gmail accounts to or from any of a number of other identified email accounts between 3 November 2005 and 31 December 2009.  The other identified email accounts include alternate email accounts controlled by the relevant individual respondents and key employees of the Tibra companies, email accounts of the other individual respondents and email accounts of other employees of the Tibra companies.

27.     This category is sought to determine whether there is any additional email or Google Talk correspondence between the individual respondents and/or key employees of the Tibra companies (or certain of them) which was not discovered by the respondents and should have been.  The relevance of the time period is that it extends from when certain of the individual respondents first ceased their employment with Optiver until just after the preliminary discovery proceedings were commenced.

DECLARATION OF JAMES LAWRENCE IN SUPPORT
OF OPTIVER'S REQUEST FOR JUDICIAL
ASSISTANCE
Case No.

28.     Finally, the third category seeks all documents, metadata, electronically stored information, or other objects sufficient to show the date or time of deletion of any email, email attachment or Google Talk message described in the first or second categories. The relevance of this category is to determine whether any of the individual respondents or key employees of the Tibra companies who controlled the identified Gmail accounts improperly deleted any documents which should have been discovered by the respondents.

**Federal Court of Australia unable to order production of this information**

29.     The party in possession of this information and to which the discovery request is directed, Google, Inc., is not a party to the proceedings.  Further, Google, Inc. is located outside of Australia and, consequently, there is no procedure available to the applicants in the proceedings under which the Federal Court of Australia could require Google, Inc. to produce the documents and testimony sought.

30.     The Federal Court of Australia is accustomed to dealing with civil discovery, as attested by its rules concerning discovery (rules 7 and 20, *Federal Court Rules 2011*).  At no time has the Federal Court of Australia stated that it does not want or need the information that the applicants seek from Google, Inc. in the proposed subpoena.  On the contrary, preliminary, interim, main and further discovery orders have been made in the proceedings (and the preliminary discovery proceedings) as evidenced by the orders of 19 February 2009, 21 May 2010, 15 July 2011 and 14 June 2012 annexed to this declaration and marked **Exhibit 10.**

**Compliance with the subpoena is not unduly burdensome**

31.     The proposed subpoena does not impose any undue burden on Google.  It seeks information about just eight identified Gmail accounts limited to particular date ranges, recipients and/or keywords.

DECLARATION OF JAMES LAWRENCE IN SUPPORT
OF OPTIVER'S REQUEST FOR JUDICIAL
ASSISTANCE
Case No.

1    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3

4    Executed this 9th day of October, 2012, in Sydney, Australia.

5

6

7                                          James Nicholas Lawrence

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JAMES LAWRENCE IN SUPPORT
OF OPTIVER'S REQUEST FOR JUDICIAL
ASSISTANCE
Case No.

EXHIBIT 1

Order NOT Entered

No:  (P)NSD681/2009

Federal Court of Australia

District Registry: New South Wales

Division: General

**OPTIVER AUSTRALIA PTY LTD** and another named in the schedule
Applicant

**TIBRA TRADING PTY LTD** and others named in the schedule
Respondent

## ORDER

| | |
|---|---|
| **JUDGE:** | Justice Rares |
| **DATE OF ORDER:** | 14 June 2012 |
| **WHERE MADE:** | Sydney |

**THE COURT ORDERS THAT:**

1.  The respondents give discovery of:

    (a)  the fifth respondent's private key or keys for the PGP encryption,

    (b)  all documents that evidence, refer to, or tend to show that any of the substantive steps set out in the document headed "Things to Do:" appearing behind tab 17 of Ex JNL-18 were carried out, on or about the times specified in that document or within the period from 17 July to 10 October 2006,

    (c)  the documents that ought to have been discovered pursuant to the orders for discovery made on 21 May 2010 and 15 July 2011, to the extent that they have not already done so, contained on or in all relevant employees' local drives, private drives or C drives, at any material time, on the computer system of any one or more of the first, second, third or fourth respondents.

2.  The first, second, third and fourth respondents together or separately and each of the individual respondents separately prepare an up to date part 3 of their respective lists of documents that identifies each encrypted or formerly encrypted email document and the date and circumstances in which it ceased to be in its or his possession, custody or power.

3.  The respondents file and serve a verified supplementary list of documents in accordance with orders 1 and 2 on or before 19 June 2012.

4.  The respondents have liberty to apply if there are difficulties in complying with these orders.

5.  The interlocutory application stand over until 2:15 pm on 20 June 2012.

Date that entry is stamped:

Deputy District Registrar

**Schedule**

No: (P)NSD681/2009

Federal Court of Australia

District Registry: New South Wales

Division: General

**OPTIVER AUSTRALIA PTY LTD**

| | |
|---|---|
| Second Applicant: | OPTIVER TRADING PTY LTD ACN 123 177 971 |
| Second Respondent: | TIBRA CAPITAL PTY LTD ACN 120 313 160 |
| Third Respondent: | TIBRA INVESTMENT MANAGEMENT LTD ACN 124 402 160 |
| Fourth Respondent: | TIBRA GLOBAL SERVICES PTY LTD ACN 120 338 445 |
| Fifth Respondent: | DINESH BHANDARI |
| Sixth Respondent: | GLENN WILLIAMSON |
| Seventh Respondent: | TIMOTHY BERRY |
| Eighth Respondent: | ANDREW KING |
| Ninth Respondent: | KINSEY COTTON |
| Tenth Respondent: | MARTIN NICKOLAS |
| Eleventh Respondent: | NICHOLAS BEGG |

EXHIBIT 2

# FEDERAL COURT OF AUSTRALIA

## Optiver Australia Pty Ltd v Tibra Trading Pty Ltd (No 3)

## [2012] FCA 641

| | |
|---|---|
| Citation: | Optiver Australia Pty Ltd v Tibra Trading Pty Ltd (No 3) [2012] FCA 641 |
| Parties: | **OPTIVER AUSTRALIA PTY LTD and OPTIVER TRADING PTY LTD ACN 123 177 971 v TIBRA TRADING PTY LTD AND OTHERS (ACCORDING TO THE SCHEDULE)** |
| File number: | NSD 681 of 2009 |
| Judge: | **RARES J** |
| Date of judgment: | 14 June 2012 |
| Legislation: | *Federal Court Rules 1979* (Cth) O 15 r 6(1) and (2) *Federal Court Rules 2011* (Cth) r 20.17(2)(a), (b), (3)(c) Form 38 |
| Cases cited: | *British Association of Glass Bottle Manufacturers Ltd v Nettleford* [1912] AC 709 at 714 applied *Mulley v Manifold* (1959) 103 CLR 341 applied *Optiver Pty Limited v Tibra Trading Pty Limited (No 2)* [2012] FCA 559 referred to |
| Date of hearing: | 14 June 2012 |
| Place: | Sydney |
| Division: | GENERAL DIVISION |
| Category: | No Catchwords |
| Number of paragraphs: | 41 |
| Counsel for the Applicants: | Mr N C Hutley SC with Mr R P L Lancaster SC, Mr P W Flynn and Mr B R Kremer |
| Solicitor for the Applicants: | King & Wood Mallesons |

Counsel for the Respondent:    Mr A J L Bannon SC with Mr S A Lawrance
and Mr N R Murray

Solicitor for the Respondent:    Freehills

IN THE FEDERAL COURT OF AUSTRALIA

NEW SOUTH WALES DISTRICT REGISTRY

GENERAL DIVISION                                      NSD 681 of 2009

BETWEEN:            OPTIVER AUSTRALIA PTY LTD
                    First Applicant

                    OPTIVER TRADING PTY LTD  ACN 123 177 971
                    Second Applicant

AND:                TIBRA TRADING PTY LTD AND OTHERS (ACCORDING
                    TO THE SCHEDULE)
                    Respondent

JUDGE:              RARES J
DATE OF ORDER:      14 JUNE 2012
WHERE MADE:         SYDNEY

THE COURT ORDERS THAT:

1.    The respondents give discovery of:

      (a)  the fifth respondent's private key or keys for the PGP encryption,

      (b)  all documents that evidence, refer to, or tend to show that any of the
           substantive steps set out in the document headed "Things to Do:" appearing
           behind tab 17 of Ex JNL-18 were carried out, on or about the times specified
           in that document or within the period from 17 July to 10 October 2006,

      (c)  the documents that ought to have been discovered pursuant to the orders for
           discovery made on 21 May 2010 and 15 July 2011, to the extent that they have
           not already done so, contained on or in all relevant employees' local drives,
           private drives or C drives, at any material time, on the computer system of any
           one or more of the first, second, third or fourth respondents.

2.    The first, second, third and fourth respondents together or separately  and each of the
      individual respondents separately prepare an up to date part 3 of their respective lists
      of documents that identifies each encrypted or formerly encrypted email document

- 2 –

and the date and circumstances in which it ceased to be in its or his possession, custody or power.

3.     The respondents file and serve a verified supplementary list of documents in accordance with orders 1 and 2 on or before 19 June 2012.

4.     The respondents have liberty to apply if there are difficulties in complying with these orders.

5.   The interlocutory application stand over until 2:15 pm on 20 June 2012.

Note:   Entry of orders is dealt with in Rule 39.32 of the Federal Court Rules. 2011.

IN THE FEDERAL COURT OF AUSTRALIA

NEW SOUTH WALES DISTRICT REGISTRY

GENERAL DIVISION                                             NSD 681 of 2009

BETWEEN:            OPTIVER AUSTRALIA PTY LTD
                    First Applicant

                    OPTIVER TRADING PTY LTD  ACN 123 177 971
                    Second Applicant

AND:                TIBRA TRADING PTY LTD AND OTHERS (ACCORDING
                    TO THE SCHEDULE)
                    Respondent


JUDGE:              RARES J
DATE:               14 JUNE 2012
PLACE:              SYDNEY


## REASONS FOR JUDGMENT

1          This is an interlocutory application by the applicants (**Optiver**) for further discovery
and, in consequence, the vacation of the current orders for hearing by referee.  The referee
was due to commence hearings on his inquiry on 7 June 2012: *Optiver Pty Limited v Tibra
Trading Pty Limited (No 2)* [2012] FCA 559.


### The circumstances of this application

2          Optiver complains of three deficiencies that result from the Tibra parties having very
recently ascertained a mistake made in June 2010 in the provision of a passphrase by the
eighth respondent, Andrew King.  The appreciation of that mistake resulted in the parties
gaining access last week to a number of encrypted emails that had been unreadable without
any available key, in the form of the correct passphrase, to unlock them.


3          One encrypted email was sent by Timothy Berry to his fellow individual respondents
Dinesh Bhandari, Glenn Williamson, Mr King, Kinsey Cotton, Martin Nickolas and Nicholas
Begg on 18 July 2006.  This contained a covering email and a three page attached timeline or
working plan.  The email stated:

"Ok Cats,

We are 6 weeks out and under the pump. Here is the timeline we are working off.

Things in colour at the top are individual responsibilities : blue is Bhandari, yellow is me and green is misc.

If you have additions / changes to this file, email them to me and I'll update and resend

RASK" (being a nickname for Mr Berry)

4        The timeline attached to the email identified overall tasks under the heading "Things to do" and set dates for their achievement beginning on 17 July 2006, the day before the email was sent, which it described as "-7w" ie. seven weeks before 4 September 2006. That was the nominated date for the Tibra companies to commence trading in Australia, Hong Kong and South Korea. The following entry was particularly relevant:

> *"28 August (-1w)*
>
> Heads of Agreement to be signed
> Employment contracts to be signed
> IP Warranties to be signed
> Shareholder certificates allocated
> **Erase all emails, sent items, deleted items, Skype chats, files etc from hard drive.
> Copy all existing files into new files. Fill up or blast hard drive. Destroy all
> paper correspondence. Discontinue PGP."**
>
> (emphasis added)

5        A significant issue in the proceedings concerns the circumstances and forensic consequences of the deletion of all of the Tibra source code preparatory work on or about 4 September 2006. No other material that the parties have deployed so far in the proceedings identified a plan or timeline of the precise and relatively detailed nature as appears to be contained in the attachment to Mr Berry's previously unreadable and encrypted email of 18 July 2006.

6        The recently acquired ability to read some of the encrypted emails and in particular the timeline plan to erase electronic records and to "fill up or blast" (that is, wipe clean) hard drives has prompted Optiver to seek further discovery orders and to apply to vacate the order for reference. The three deficiencies in discovery complained of the Tibra parties' failure to:

(a)     provide the means to read the encrypted emails earlier;

(b)     list documents destroyed in discovery lists and state when they were destroyed, when or to whom encrypted emails were sent or by whom they were received;

(c)     properly address the categories of documents ordered to be discovered in 2010 and 2011, beyond looking at and discovering what had been collected for preliminary discovery that had been ordered against most of the Tibra parties on 19 February 2009.

7          Optiver initially raised a fourth issue about whether the Tibra parties had misconceived the scope of discovery within categories 1, 3, 6 and 7 ordered by Emmett J on 15 July 2011. However the evidence of Sue Gilchrist, one of the Tibra parties' solicitors, has shown that this misconception has now been remedied and the further relevant documents have been provided to Optiver.

## Background

8          The Tibra parties had not been able to give discovery of the encrypted emails in a meaningful way beyond a listing of them and, to the extent that they revealed these, the sending and receiving parties, dates and any subject line. Without access to the means of reading the content of those emails no one could be certain of who all the addresses of any particular email were and, more importantly, its content. Thus, a discovery list recording documents that were last in the control of each of the Tibra parties could not be prepared as required by r 20.17(2)(a), (b), (3)(c) and Pt 3 in Form 38 of the *Federal Court Rules 2011* (Cth) in a way that specifically indicated whether any particular document had been received by any individual respondent who was not named in its heading or address line and when he last had that document.

9          Under the now repealed O 15 r 6(1) and (2) of the *Federal Court Rules 1979* (Cth) (see now r 20.17(2)(b)) a list of documents in the old Form 22 (see now Form 38) had to enumerate the documents that were or had been in the possession, custody or power of the party making the list. Schedule 2 of Form 22 (see now Pt 3 of Form 38) had to enumerate those documents that the party had had, but no longer had, in his or her or its possession, custody or power. The deponent of the list had to set out in the affidavit verifying it when each document in Sch 2 of Form 22 (see now Pt 3 of Form 38) had last been in the party's possession, custody or power, what had become of the document and, to the best of the deponent's knowledge, information and belief in whose possession, custody or power the

document then was and where it was (see paras 3 and 4 of the affidavit in Form 22; see now para 6 of the affidavit in Form 38).

10      That situation changed on 6 June 2012 when the Tibra parties provided the passphrase of Mr King to Optiver.  The Tibra parties explained that Mr King had given his passphrase to Tibra's then in-house counsel, Justin Chau, in mid 2010 but for one reason or another Mr Chau either did not correctly transcribe it or Mr King failed to perceive that this had not happened.  As a result, no one was able to access Mr King's encrypted emails on either his own personal computer or any other version of them that remained in existence.  His computer was the only personal computer of the individual Tibra parties who are respondents that remained in existence and was available for discovery and forensic examination purposes.  The other personal computers and laptops of the various individual Tibra parties were destroyed or wiped clean of their data at various times prior to the preliminary discovery that was ordered by Tamberlin J on 19 February 2009.  Optiver seeks to link this absence of contemporary records to the entry for 28 August 2006 in the "Things to do" timeline.

11      As soon as the Tibra parties' solicitors had sent Mr King's passphrase to Optiver's solicitors on 6 June 2012, one of Optiver's computer experts used it to retrieve the encrypted email sent by Mr Berry on 18 July 2006 that I have described above.  As originally discovered before decryption, this email appeared to have only been sent by Mr Berry to himself at another email address of his own.  Thus, as discovered, the email had no other addressees or subject line and revealed that it included one encrypted attachment named "The Cool Cats: PGP".  That attachment was the timeline document to which I have referred.  The acronym "PGP" stands for "pretty good privacy".  This is a form of encryption used to transmit emails in unsecured environments such as through publicly accessible means such as gmail or Bigpond internet accounts, as this particular email was sent.

**Steps taken by the Tibra parties to give discovery**

12      In consequence of the application by Optiver on 7 June 2012, the day before the referee was to commence the inquiry, I directed that evidence and submissions be prepared so that I could hear this application urgently.  In those urgent circumstances the Tibra parties prepared and filed affidavits by each of the individual Tibra parties as well as by Ms Gilchrist and Paul James, who was the director and head of IT Operations Asia of Tibra.  Mr James

had been responsible within Tibra's organisation for overseeing the collection of documents by the four corporate Tibra respondents to give preliminary discovery in accordance with the orders in February 2009.

13          Mr James said, in paragraphs 2, 3, 7 and 8 of his affidavit of 12 June 2012:

"2.    I was the Tibra employee responsible for overseeing the collection of documents in order for the four corporate respondents to give preliminary discovery in accordance with the orders made by Justice Tamberlin in 2009. As part of that process, I, and others under my supervision, collected the following documents:

(a)    the hard-copy documents held at Tibra's offices by Mr Berry, Mr Bhandari, Mr Williamson, Mr King, Mr Cotton, Mr Nickolas and Mr Begg;

(b)    the electronic documents stored on Tibra's shared drives;

(c)    the emails stored on Tibra's server for each of Mr Berry, Mr Bhandari, Mr King, Mr Cotton, Mr Nickolas and Mr Begg;

(d)    emails provided to me by Mr Williamson including emails stored on Tibra's server;

(e)    emails provided to me by any of Mr Berry, Mr Bhandari, Mr Williamson, Mr King and Mr Cotton from their personal email accounts;

(f)    chat logs stored on Tibra's system;

(g)    Tibra's "wiki" (that is, an internal website that could be viewed, added to or modified by Tibra staff);

(h)    Tibra's trac-ticketing systems (that is, the systems used at Tibra for creating and tracking internal software development and other technical issues).

3.    Apart from source code, as far as I am aware, the sources of documents referred to in paragraph 2 above are the only sources of documents held by the corporate respondents that could contain discoverable documents (either discoverable on preliminary discovery or discoverable in these proceedings). I reviewed the documents referred to in paragraph 2 above, other than Mr Williamson's emails which I understood had already been reviewed by him, for the purposes of providing them to McCabe Terrill, who were Tibra's lawyers at that stage, for the purposes of discovery.

7.    In order for the corporate respondents to give discovery in these proceedings, I provided Freehills with a complete copy of everything that I had collected for the purpose of preliminary discovery and had previously given to McCabe Terrill. I believed (and still believe) that any document held by the corporate respondents and discoverable under the orders made in 2010 or 2011 was collected in the searches that I and others undertook for the purpose of providing McCabe Terrill with documents for preliminary discovery. However, for the purposes of the discovery in 2010, I did arrange for some additional searches to be made.

> 8.    At the time that I swore the 2010 affidavits of discovery for the corporate respondents, I was aware that the list of documents prepared by Freehills included (as a document no longer held) the source code repository that Mr King had deleted in September or October 2006. **That was the only particular document that I was aware of that fell within the discovery categories and which the respondents no longer held.**" (emphasis added)

14      Mr James was briefly cross-examined, principally, about the statement in the last sentence of paragraph 7 that he had arranged for some additional searches to be made for the purposes of preparing discovery in 2010. He identified that those additional searches related to Mr King and Mr Cotton. He was not cross-examined as to what had been done or not done in the course of the discovery exercises described in his affidavit.

15      Mr Bhandari said that at the time Tibra moved into its Bondi Junction office premises around 4 September 2006 he deliberately transferred to a Tibra server all the emails and other electronic documents on his personal laptop that were related to the Tibra business. It appears that this data was the principal source of the encrypted emails that came to be discovered. This included his private key for the PGP software which was one of two essential integers, the other being a passphrase, to unlock an encrypted email. Mr Bhandari believed that he could have opened the encrypted emails using his passphrase until some time in 2007, when he believed that the private key was lost as a result of an upgrade to his work computer.

16      There is no evidence that any search has yet been made for that private key on Tibra's computer system beyond what Mr Bhandari said he believed had happened to it. However another respondent, Mr Nickolas, gave evidence that Tibra's mail servers and shared drives, on which electronic documents were stored, are backed up and archived for some considerable period of time. He said that copies of deleted emails and documents could be restored from those backup and archive sources if required.

17      Mr Williamson denied deleting anything on the basis of the "Things to do" timeline document. Although he did not recollect the document, he said that he was "paranoid about Optiver trying to get information about what we were doing". He said he deleted all the data on his desktop computer that he had at home after copying all of the unspecified files he needed onto a USB stick and transferring those to his laptop. When his laptop began breaking down in early 2008, he copied any files he still needed onto USB sticks and transferred this data to his new laptop. He said that after the move into Tibra's Bondi

Junction offices, he usually shredded hard copy documents that he no longer needed. Mr Williamson provided Mr James or the Tibra parties' solicitors, Freehills, with "all documents that I hold that could in my view possibly fall [within the orders for discovery made in 2010 and 2011]." He was not aware of any other place where documents that he no longer held on his own could have been kept. He had disposed of his old desktop and laptops. He said that he had kept his PGP private key on his home desktop computer, but no longer had this and accordingly could not access that material.

18        Mr Berry, who was the author of the "Things to do" timeline, said that he transferred everything he needed for Tibra's business from his personal computer to the Tibra network when it was established and deleted or shredded, if in hard copy, the balance. He said that he complied with the preliminary discovery orders, in essence, by leaving it to Mr James to collect documents from his and the Tibra corporate respondents' work computers. Again it is not clear from the affidavit material whether any check was made of backups or archive material that Mr Berry had deleted from his Tibra system emails or files.

19        Mr King said that he left it for to Mr James to search on Tibra's system for anything that he had to discover from it.

20        Mr Cotton said that he did not transfer any data or files to the Tibra system from his own personal computers, but had deleted all his encrypted emails from his G-mail account.

21        Mr Nickolas, who was not a party to the preliminary discovery proceedings, said that he relied on Mr James to provide all his emails and electronic documents in Tibra's system for discovery.

22        Mr Begg was responsible for setting up Tibra's internal email system and implementing it when the move to the Bondi Junction office occurred. From about late August 2006, he stopped using the encrypted communications and started using a Tibra email account for work-related emails. He said that he ultimately deleted the encrypted emails from his personal laptop in late 2006 or early 2007 and never copied them on to Tibra's system. He gave his laptop away. He, also, was not a respondent to the preliminary discovery proceedings. When asked to do so, Mr Begg had checked his current laptop and G-mail account for old Tibra work materials and was unable to locate any.

**The Tibra parties compliance with the orders for preliminary discovery and discovery in these proceedings**

23      On 19 February 2009, Tamberlin J made orders in the preliminary discovery proceedings requiring all of the then Tibra party respondents (i.e. excluding Mr Nickolas and Mr Begg) to give verified discovery of documents relating to programs, source and object codes that were in their possession, custody or power including "all versions thereof (whether current, archived, deleted or otherwise)". Mr James addressed that discovery obligation with respect to the particular identified categories of documents in the way he described in paragraph 2 of his affidavit that I have set out above. Their lists of documents sworn or affirmed on 19 March 2009. Each of the then individual Tibra party respondents said in Sch 2 of Form 22 that he had had no documents that were no longer in his possession, but were in the possession of others.

24      As a result of a complaint by Optiver's solicitors, each of the then Tibra parties made a supplementary list of documents on about 9 April 2009 setting out, in a new Sch 2, the documents they no longer had in their possession but once had. Those listings dealt with documents that each of the individuals had while, or as a consequence of being, an employee of Optiver, but did not refer to any documents that he had created and no longer had while working in the establishment of the Tibra party's operations. This led to a further query on 23 April 2009 by the solicitors for Optiver as to whether the preliminary discovery had extended to documents worked on or created by a number of other persons including the software developers, Mr Begg and Mr Nickolas, together with Timothy Muirhead and James Tydeman. In addition Optiver's solicitors noted that the lists of documents did not identify any back up tapes or material backed up in the ordinary course of business. They observed that "while it is plausible that this material may have been deleted in a rotating manner as is usual practice", no such step had been identified in the lists of documents and no back up data tapes had been made available, that included documents or information pursuant to the Tibra parties' preliminary discovery obligations in the order dealing with programs, source and object codes.

25      On 22 May 2009 the Tibra parties' then solicitors, McCabe Terrill, replied. They said that each of the four identified developers had produced all developer notes and files in his possession, custody or power as required by the orders and drew attention to parts of the discovery in which that material was contained. McCabe Terrill also said that, in producing

the discovery, their clients had reviewed backup data tapes, where available, and that documents contained in those tapes that fell within the preliminary discovery orders had been produced.

26        Optiver commenced these proceedings later in 2009. On 21 May 2010 Emmett J ordered that a number of categories of further documents be discovered. When giving discovery in respect of these orders the Tibra parties set out the following description in Sch 2 of their lists of documents:

> "9. All other business records (including emails) falling within the categories attached and marked 'Annexure A' which in the ordinary course of business had been deleted, lost or destroyed or **the contents of which are no longer accessible."**
>
> (emphasis added)

27        The emphasised phrase appears to have been a reference to the encrypted emails. Next, on 15 July 2011 Emmett J ordered that the Tibra parties give discovery of further additional categories of documents. In late October 2011, after the *Federal Court Rules 2011* (Cth) had come into effect, the Tibra parties provided their next lists of documents in compliance with the orders made on 15 July 2011. These new lists disclosed in Pt 3 of Form 38 (that corresponded substantially to the old Sch 2 of Form 22) that the Tibra parties no longer had possession custody or control of:

> "4. All other business records (including emails) which in the ordinary course of business had been deleted, lost or destroyed or contents of which are no longer accessible."

**The parties' submissions**

28        Optiver argued that Mr James' affidavit of 12 June 2012 showed that, after collecting the documents for the purposes of preliminary discovery, he gave no separate consideration to addressing the particular new categories ordered to be discovered by Emmet J in 2010 and 2011. It contended that the categories of documents required to be produced for preliminary discovery were much narrower than the sum of both later sets of categories. Optiver argued that preliminary discovery had been directed towards the source code, object code and development documents for the Tibra programs and such documents of Optiver as the respondents to that application held in respect of corresponding Optiver codes and documents. Optiver submitted that once these proceedings commenced, the issues were defined in the pleadings and it was common ground that the issues now concerned allegations

against the Tibra parties of breaches of contract, breaches of fiduciary duty, knowing involvement or participation in breaches of fiduciary duty by others, use of confidential information and infringement of copyright.

29          Optiver argued that Mr James' affidavit showed that he failed to check the Tibra system or premises for any electronic or hard copy of documents held by any Tibra employee who was not a personal respondent, including documents of Mr Tydeman and Mr Muirhead and two others, namely Mr Norwood and Mr Maddock, who were employees of one of the Tibra companies and addressees of a number of encrypted emails. Optiver contended that Mr James' affidavit showed that he had failed to collect documents from any personal email accounts belonging to anyone other than Messrs Bhandari, Williamson, Berry, King and Cotton. It argued that Mr James had not collected emails in the personal accounts of Messrs Begg or Nickolas or those of Messrs Tydeman, Muirhead, Norwood or Maddock. Optiver contended that Mr James had also failed to check Mr Williamson's self-review of the emails that Mr Williamson provided him or to collect documents from Tibra's computer system beyond the shared drives and servers. That is, Optiver complained Mr James did not check the local drives, private drives or C drives of the relevant employees. It also argued that he did not investigate, obtain or collect documents from backups or archive files referred to by Mr Nickolas. Moreover, Optiver argued that the Tibra parties' discovery had not thrown up any documents relating to the implementation of what Optiver characterised as the plan revealed in the "Things to do" timeline.

30          The Tibra parties argued that Mr James' affidavit had not been prepared for the purposes of dealing with the adequacy of their discovery generally. Rather, they said it was prepared as a response to Optiver's argument that the recent revelation of the contents of previously encrypted emails called into question whether further orders for discovery were necessary or would produce more material. They said that Mr James' role in 2009 had been to collect all the material he set out in paragraph 2 of his affidavit and that this role was not, at the time of its collection, limited in any way to the categories for preliminary discovery. They also pointed to the disclosure in their lists of documents and the letter from McCabe Terrill dated 22 May 2009 dealing with the extent to which their discovery had been undertaken, including in respect of backup and archived material.

31        The Tibra parties argued that Mr James' collection of, in effect, a library allowed their solicitors to select from that material what was discoverable, *first*, for the preliminary discovery and, *secondly*, pursuant to the categories ordered on 21 May 2010 and 15 July 2011. They pointed out that on each occasion further documents had been discovered by them from the materials or library initially collected by Mr James. The Tibra parties submitted that this demonstrated that he had cast his net as wide as possible for any documents that any of the relevant persons had created, whether relevant or not to the possible or later litigation. The Tibra parties also noted that their discovery in these proceedings included files and documents created or received by other Tibra employees outside those identified in paragraph 2 of Mr James' affidavit, again showing that he had diligently collected a comprehensive library.

### Consideration

32        The principles on which further discovery can be ordered have long been settled. In *British Association of Glass Bottle Manufacturers Ltd v Nettleford* [1912] AC 709 at 714 Viscount Haldane LC said that it was possible to go behind the conclusive nature of an affidavit of documents where the basis on which that affidavit had been made turns out to be wrong. As Menzies J observed in *Mulley v Manifold* (1959) 103 CLR 341 at 343 the insufficiency of an affidavit of documents can be shown to appear:

> "not only from the documents but also from any other source that constituted an admission of the existence of a discoverable document. Furthermore, it is not necessary to infer the existence of a particular document; it is sufficient if it appears that a party has excluded documents under a misconception of the case. Beyond this, the affidavit of discovery is conclusive."

33        The present application was generated by the recent discovery of an error in Mr King's identification of or the transcription by him of his passphrase. The affidavits that the Tibra parties prepared for this application were directed particularly to the issue of the encrypted emails and the adequacy of discovery in relation to them. It is easy, with the benefit of hindsight, to see that the particular step of checking in the backup or archive material for Mr Bhandari's private key should have been addressed specifically in that material. The Tibra parties conceded that, whether they had looked for that private key previously or not, they would undertake a fresh search for this in light of what has happened. That is a perfectly proper course. However, the absence of evidence that this step had been taken earlier allows the drawing of the inference that it had been overlooked.

34        I have some sympathy with the argument put by the Tibra parties that Mr James' affidavit was not directed to the general adequacy of their discovery. However, I think that a fair reading of his affidavit suggests that he was attempting to be as comprehensive as he could, in the limited time available, about what steps he had undertaken in obtaining documents. In that context, it does appear that he did not check the Tibra computer system for electronic documents held by employees who are not personal respondents, except so far as documents may have been provided in respect of developer notes and files that Messrs Muirhead, Tydeman, Begg and Nickolas were required to produce for the purposes of the preliminary discovery orders.

35        It does not appear that Mr James checked, in the Tibra system, the local private or C drives of any of the personal respondents save to the extent that they may have revealed emails from their personal email accounts. I am not satisfied that Mr James was required to go beyond those individuals' personal email accounts for the purposes of their own compliance with the orders.

36        The failure of the Tibra parties to list the individual encrypted emails that any of them subsequently ceased to have in his or their possession, custody or power, and to specify the circumstances precisely in which that happened, was understandable at the time that discovery was given and before last week. Because some of those documents could be read for the first time only last week in the context of the litigation, there should now be proper discovery in relation to what has now become available to be read. This is important given the centrality to the issues in the proceedings of the role of each of the individuals who are respondents. If Mr Bhandari's private key can be located and if it gives access to more relevant material, that can also be included in the supplementary lists.

37        It is fairly clear from the pleadings and the issues that have been agitated while I have been managing the proceedings, that Optiver alleges that from about mid-2006 the personal respondents went about a plan to set up the corporate Tibra parties' businesses. The encrypted emails may or may not contain other material relating to any particular documentation of any such plan. However, the "Things to do" document attached to Mr Berry's email of 18 July 2006, appears to reveal that some detailed consideration had been given as to how various persons would participate in establishing the new business. It specifically provided for the deletion of, relevantly, emails, sent items, deleted items, Skype

chats, files and the like from individuals' computer hard drives, required them to copy all existing files into new files, and then to wipe clean all the personal hard drives of individual employees including those who are Tibra party respondents.

38          While the Tibra parties argued that the "Things to do" document's requirement to copy existing files into new files negated any adverse inferences that might be drawn from any plan to erase the other material, it is not clear that this would necessarily be so.  The various individual respondents, other than Mr Bhandari, seem to have arrived at a position by one route or another that they no longer have those items or data in their possession, custody or power.  Mr Bhandari, on the other hand, copied all of his material onto the Tibra system, even though the encrypted emails have been completely unreadable until recently, and even now only some have been deciphered.

39          I am satisfied that Optiver is entitled to explore, in discovery and the preparation of its case, these materials that have only recently become available to be looked at by them, through no fault of their own.  They are also entitled to consider the issues that these materials raise.

40          The Tibra parties have said that by 19 June 2012 they will be in a position to have undertaken the search for Mr Bhandari's private key and will provide proper listings of documents in Pt 3 of their supplementary lists of documents, and presumably, proper discovery of all encrypted emails that can now be disclosed in such lists of documents.  It should be possible for them to explore the other deficiencies that I have identified in their discovery by then, but I will hear them on that question.

41          Once that supplementary discovery exercise has been completed, it will be possible to assess whether further documents have come to light, and what the impact of these will be on the conduct of the litigation.  I will hear the parties about that matter on 20 June 2012.

I certify that the preceding forth-one (41) numbered paragraph are a true copy of the Reasons for Judgment herein of the Honourable Justice Rares.

Associate:

Dated:      28 June 2012

SCHEDULE

NSD 681 of 2009

**TIBRA TRADING PTY LTD**
First Respondent

**TIBRA CAPITAL PTY LTD ACN 120 313 160**
Second Respondent

**TIBRA INVESTMENT MANAGEMENT LTD ACN 124 402 160**
Third Respondent

**TIBRA GLOBAL SERVICES PTY LTD ACN 120 338 445**
Fourth Respondent

**DINESH BHANDARI**
Fifth Respondent

**GLENN WILLIAMSON**
Sixth Respondent

**TIMOTHY BERRY**
Seventh Respondent

**ANDREW KING**
Eighth Respondent

**KINSEY COTTON**
Ninth Respondent

**MARTIN NICKOLAS**
Tenth Respondent

**NICHOLAS BEGG**
Eleventh Respondent

EXHIBIT 3

From: Danny Bhandari
Date Sent: Monday, 07 August 2006 11:13:38
Date Received: Monday, 07 August 2006 11:13:38
To: Campbell Norwood; christianking81@gmail.com; roohif@gmail.com; raska27@gmail.com
CC:
BCC:
Subject: RE: Admin
No of Attachments: 0
Attachment Name: None

-----BEGIN PGP MESSAGE-----
Version: PGP Desktop 9.0.6 (Build 6060) - not licensed for commercial use:
www.pgp.com

qANQR1DBwEwDG3t30l01cABBB/0ffzekMdpe1efwlwjCeDe/YrPR5zvlmXJNK9FJ
lvSKZdeSyUODgt7iy2UV6fjQD53MriNT0i/ZXU2OO3Vz88Cb4eySDqV181Zl3NU9
LgPp+DmxtxCBkHLYZi91ISNu8s92P/kJbwJW0ODWT0w9BYkQWgpXzPiNa5TuXcmT
dQ6CXltGakQqxcTHpenepA2wL5HfLFxjS+0HFvO4drwfsYrMA8M9Q+ls4jaXQdF+
0MI+poqn3+mxogwynGfuFCl5dBafEVvUR5wTwslkaWcQTAFRUYAUOuUblHA2Qowd
s/BC4zqgWDokr0Cdnrgb3/6PKGGQuf9UIRM+JPnk/p3OeN30Yw0BMA/R2XHOQBa+S
AQf+OS8CWlDsNav3OOiw1qTh7JlP7wLPCnVyOxMvdS+9ZZFhqRqEXG2Xjx5Mt7wD
8mC8Ayw+PlHtJ7ezCRPBTaddYDC074t5fCqf3wY21Fg5KOoxpKlCll0EsInoh0sX
lXzd4hY/jZkGgld67zarNEYzE8aOGhfmRDuss2PRCKHc5lYuxTamZG5lQR0e5KAG
7ROdgBqql4K4tajHGTa5xQjExfMu1QWnYdC0HxNljFQkebo4xswtpM6nUggmGo2N
xHg8VWUPSU2C27R3SZE14Vj4QvzRc+BaBoj5nednuuweq8qeixHBYzURETTJ8B5r
ElrWF9Hb+++kvXvl0Ylg2lObrsHBTgNUoFgKGJOXWhAf/AsVF2lFGWO002Y0RpNi
1yqYlLcaKF+bb5aZlofJus/A2VspdlS3MN5lapOf8Yldm9F8YgKVAjt101XmlF4G
uCr5MLvsqf6w5Qk8KzX+VaR/cLJJmrcW/lPKxhbTyFzeSpf2pe+9Qq+/wDCBy20lV
PWtSZkVu+nw+qwZ2m7GDT3QaWu/r8i8EVmvcaspwxLFEXwU/gOkxrldll7XUGzJ
4r2lSIAXGgOy4u/DXt62gJo43QXl5CFDlSPlsvq/f+x/QqRNr/8xfAGVn7q88T7T
hzj9zGyNLCa69Bx/aHDfXGJuMsGGoFNVhoFbW55ZJSaJZgXRNX5v/PGPdpGOojNb
3o0H/lNzpgMkN1muebufTE+h1Mwf5NhCJ8xkFwBYb5n75vV2bc8DpzzZ72ytiZMU
h9njYlqf77rQKNh6ysxq2dT552Pz4GRrK6TS1n4wZd4EzUYbsP522tE/mu80OnLo
NFyY08GXi3zzd8BNnPDvTJjaVvl50rqXClgva0WX9OlGHHJElcddHD/nEcSm/R+r
sXj1FBSBh7x1FmhkAmHZjEGQM9wK0tgYN5tOlgGyT0c1kquUf87f1qJ+CxUWpQAU
CONy1ciqyQVTVqJbn5TuZ1wD+0+2ZM6+xtaWag4/8DHs9luMS401Te/oXjL7qwhu
iHhfbx4X1v2bFyXD48OGbojXkqDBwEwDyRbvpXPm6HcBB/0ep4OkPKIEOSE4cqEF
cit0z+YSgcfEnbEPhb7/ZOA2ZysL2v4hDGFwx04/MJ2bFslsdSBeXuplrQw7lH5U
zc2Ynml1Pk3MDblhA4LTThh1PdNhjtStF6LbWM7RKGADslbfYLS+fL50RpdfSw53
Vm7ci35z6ucJGWVROdPvxHlW9TXxyxRMBfOXHbhoYtlP6sPq423Y+7WlfbWeqjrU
4l4clvakd3G8Ha9f2JWFRF9SUaRZeUdMiNWce/k5/VaKzjl9tqinAeCPDbDKC8
rS2xpQJ0zzqZnr2cZkySVxwN+g//lhKXW4vW6wGBkwC/Yh/D1fy/NuG9oJ+PEjlU
MK64wcBMA3a0LZZcVfk/AQf/YkS90AVysleoOdPqJo17joplP5AF7o0egH3ADU0o
0gDHL7bcLKpLPxlZQbnsaxtcVgAbW4JIZo6C0C4GwHf58x8m/d5cHslvW8fJexh0
rcrCl9/y2BcjyGSaPDlvtvlDl1kxq1SBw0oHBVzCzs2Rj5SWJhUVZM4Y2QyOP2+K
tiLyJqMaupjnn56spimCv725TyzlSfDwQbXlKlopUKvk73FkM++4hjcCGxu5SVTM
ReeJPrGNqf0KWGNWllNef4t2hlDeQWRS4oHmWqfSTByu7P55al4P0E5pDNMhfrcz
WRJy5Txb8PQy1myxGd4pfF5+42RT5Gibz8uh0PO/GU4qHsHATANSo4wDeR5EGgEH
/13EB2LtsXyOx4LVVfu+Otk6BX7l85boR8VB1ll5hhygZZ/3v8rm07Gh2AMGMpJd
0riLNOu6pleNJFeqqc7cFP7yNFBQVpDriEBlve99Jl/laipkMlo1xEZfLoW7BOMo
Zhiy2bNRUA/lQ1BKEAJplzOWWGCDR0OOeqtrI7IjNi02TAOB9xZc1lX1ku/oNLbb
MDYqVDbGJpA1ZctEgifYV1pRRmjYbtYvt1AQ0P0Dp5TL1QC0vilEBAOroyeYUOpP
uzGkVt9ka1Zl1B4cYD0A1RovDkQrHngXBEd0P46kxO0zSczH3m/UZm0rEOUmzo5J
Sz04O4EU/YY4PBKeEM|+al3BwEwDnD2sUowiHklQBCACazfshR+iAAOXlyeAlizbX
fmteyKRFsMjoVs2FWOiUZGFJ+rNRHxQuRNGeTVMcc7wFzsyN9fb553o5d7kAsMeF
h1W/nsc44l8r8xAhsmGkhD5+yY1oV/PZb3Dt5XxC4j8nLnk/N0AzI3OySpPmrkRV

TIB.158.001.0158

9HlirxFLpi1+AcKypnaj9giq5gFwR7YJRy3rrE17e/c2UCD1nslyRpgBX3t6LFtQ
DUAsmxl2kRjDQWApXzmL9x0zXub056limhlMyaSXm7qq8FORLyVdTyNeSHBk3I20
swujQlHMCsy7FCFnGvh6Hs9pLwTW4i03vr8splO9aSIDhQYobYfDsK2bdsQObu+5
wcBMA3Rl4oFq62E2AQf9HAmpR5ND19IEvTsfWgxhJqTWcg6A2nObZHX5nYZEklA7
XNOLm70HBpPBdRt/x+Ir7SRGYNrfHfZEHhqNh9/r+Zf+lLPZ+n3pxxD8GTbhmprk
pBVMG9/gJ4kZ051o8py2QcLJ4IfUV5yJoAoRYEHpUbfeHpgRlGdljmAfCH1NJ5Q4
ZoQquu0qC1oIbaCQjQP2K3HH8n2EeZ8LcAKFJeE8MFs0750QFVQAwr7dljFU/E0
enmDWyLPO4plIMf+I8Or1SZBo1qqFeAAB2YQNjNEgG35GuSDzCxMJptjzPrZcOOYl
Cp3Oj02USaNB2RkSV1pELABceJbQVIIchdRN/h2e2dLBwwGsdMZ94V0LHemNHJOE
n/AjIeOf+fq12bfmM52JU1ZAIR8TPIsJFKbYNxMSbVArF3TRCRRoWw3D9PLeMlLa
DwyhdajifW7oPFHWUWqmnKk8KRA9rveJ9NcSl1DreMylAJ2on1wE3elifLdHONH8
ZjmKJIWXZdFgfcAhBjRGNoh7Z/mYulu/nDwl1f5vLoWwa70ZRmZfAZRqHDoLv9Bx
2Nc7sWVNIqLEBj4vjQpXsAdQHkkGx0kkcl/AMiUWDvDNf+FcfpMaGJJTl++cTKRl
59mHLkwq4RY/Ks0xTycEyX3AV6MusoT2ckpL7BN59dLT4j/XYQJbfRJSFSGOdV/J
ANaSoa2EbhpD/r875sba/g2slN2Tlv0414Fhp9Cq1X0cbgycFJPlxyPinAPE6srn6
JbQYp04ha4V2zHVVWrB8Um4em0dN/4NE8c6joXjgmu4YMwSLtEmd3UXzmdGmSgP
S8lqNfkidKM4brnsHBnlhEFExpnjoWKps8U/3KtScY5zhFlgklPnU0K1vEm7iOTD8
5hreCExokzdFg4QTGTo4PTHRxC5eWV5VV5nqNs8lB+89FY5fsXxolFldvtBylHvl
/HZSuJyy2bDsDy2+PFmsljQwBIA/kxwC/k884jJLJudLY8yMayAs+M6r4JHLvOA3
iC+2QE5SWSAe6YBS7plhCehFbggfPYIIV7rL0UM3EJkyZ2Qmtrtc5NLpA3wSn0p8
yk+YnRKpM82aLE81oJ+m+vTrj12yrejTzdhBFxOPBK6VDNZen2K/sYavOadVQUfv
IeokT0uXDOXrTlMb84H/M/JeX0Kq95wY7/yL/ihKnrYi6+4nsv3n35E7E9KYFVek
Jz53klc=
=06GJ
-----END PGP MESSAGE-----

TIB.158.051.0138

From: Campbell Norwood
Date Sent: Wednesday, 31 May 2006 12:56:37
Date Received: Wednesday, 31 May 2006 12:56:37
To: Glenn Williamson; campbellnorwood@gmail.com
CC: Christian King; Danny Bhandari; Tim Berry
BCC:
Subject: Re: Ramdons
No of Attachments: 0
Attachment Name: None

-----------------------------------------------------------------

-----BEGIN PGP MESSAGE-----
Version: PGP Desktop 9.0.6 (Build 6060) - not licensed for commercial
use: www.pgp.com

qANQR1DBwEwDnD2sUowHkIQBCADMf1HPyVTQRuLi0hutQjYGTXLqVIAzQcCg74Ca
ySHFnYG5ZoQStscQ7Sxjv4YwIAKuRT3mtI5u3rbQp3PG+oVLtPJeq7eCsGzd4KqY
okMu5zvOWNrDC78MpEaBEO4LW1lFVhP9AdiSBODj7e1OWKqdInEuew8WOazOQCS9
XQzwAcrLfbWPupmISN5MZ0upnYJ6ABanBZDGzzeATgqjKfOciIKLA/Rphp78wn2
bvyczT2Eti7OgE3gn4l/aK2dbiv5QZpzMmVAjmoRIcaXCS31VIuz8u8/ndX6+c0f
AXBL3h6ffRDJoJYQoDr2l+ej5LFpwvUzwK7pUSVLrSEhr3NXwcBMA8kW76Vz5uh3
AQf/WJBOrDmRhcjDUcP7DApc/azfDPB9qsK6Hlwroaldf8q9/YR2ioV26v/Ze0w+
QaPk4iZGWPf5z4LxmrovpfB9jj+Oq020Es04NjGw6gFKGrxqDJdk5xPNq+pakL/
3n0tIEvnD/vsTMVYn5elLoawc64fKq4aKTnMQO2Au1gbhyOhofNgdMfZtqRD9IGa
ixIKYjBo6ICoOX/SIsYFcIO1IEOmyj5WuydQW+1xSQQ1rm36/UnWvxbH3et+o7ZR
3vmOdAV4TRxGohfBDCDsgdOsnGg+fV6mJIPsYtOdMyebs9ZpG9H2fJSPJoIATK0X
jYEFOVSQxEGgnkTsJMMZpqt8RMHATANOSOK8authNgEH/3jdFwSA6thVffECuDoW
D0eg2XhAe/w5VvpvD2Yxs/7953Nrfv4TI9m2WsE9Uu5PYQr0r76SH1SpIA4t5AKx
XqTA4gGYog2H0l5CorZ2V6Hz0f5DjcswWuKU9kzl8BvVImniBjHRl8eQx0bTxVy2
VEYS+0oChIGbL+1jputooQJW3U97qf+IIaGf/t6qQLX9wg5X52mYb5Etm9b95Er
85PGLFN8sQMp799fu8aGCxo4o43jeFeHx+sChUnTlOhxLJfhZyw+N4LsrEwRLx09
88enGMr9v5xdt2jrdfXDrAl4slYUslqKYJ0VSYf8prox45zdn3OAagcjE4aRmEmb
9AjBwEwDdrQlIixV+T8BB/wMAbMtypaP6Ox8KsogZOrc+GtXCUQIA5C249xuIMNC
99hevzDr1sKQqQyaQ7KsXM1WrMz1fykJdA7hppivnV8cl/DfSceAhhy7+hACxWIi
U5tlUb/S50YGv+Xy1P1mxi7Y++m9nyd2vPNqfgEX6gpLvPGBoc+jFxbGT+5USRjn
bTGr69GApBXeRwl0GhqWZdd9UuBxCkdVBL1AR0BbVP8moXaLCyc3yhNnXdEPJ+do
uINP5aFCVcQ+Tw495GsJ0XKp8xR0bAOJlrTR8sS4GApGzWT710Zu4bTQFfUwcpkx
gjO2UGG5o3ktDN/Faxb7E0io73sc6ftDoSFWmurSz4aZwcBMA1KjjAN5HkQaAQf9
GANYgB0vMhUbdM4aEo7JY3WnRq/SbyDaSR0wTTNDmBWWJwa0BQW2qcASKdwrM2/R
BcSWJL/QvqxDlONjJNmAjvlXw/Of2qeEHf1dQMSpmOh4TsT9/d+92yWD+50lgtpz
j5ONqK6uALQuwiedNixvh6To5R2eydc4skd9hlY+E3x7WP+aBXCHb30+dBPHgJO4
nwG6oo2VJdEm8gswTUZM2736fl7uJEVHOswyU/JwQ65tWQTFg0RKZKLp/hBYsnjD
XEwzlrWP9AS6SA+3Bwmfs8RxgD8p6iecWr9Dd4m2Gosw+01cMpj9O8OUic+bDLQw
K/F1OWZgw7U+/Ryi0YFQn9LG7wGZkQizg3BXQ6A9At5WeJPjKsQoq/u8cbDoA+ny
mCUILYJT1BHUYMOrb/nAVvFULC0sSyuDDqHbhXfGd1yeUVbtN0NPMJ6A8z87R9Q7
2dWSpop8BrPT9J62RAcgGO8iddzgbnoPnlbLgWoHHu6Drml9nqCgTTphleG+rbeS
4533ve8hT73mgQQgh6pZRus52HEWPmoVf7QwYxUXInGeGw2xrKa7/2/ljllERBQg
xrQ6DbHeOnM5fU93FZZeNHFSqCWD6PH5uTW8oFM8krXNB7LQjPYBsPE9JY4NOzvZ
Npr7cTGko7e5HWetSY4MRsw+r9k2lRvK6cbO1dxpGUfK6o9WxBnSjUSCueYruQ2K
H/Iibi7gbQbTkfMOFIscxHzkvl/IBnUUqn7thBhffP7u8DxfmsLswbcF1ZEVeMcc2
VmkkKeWLT/xhkj+GTAzySAcKE/O5M/vu+2EMOKlyRL0+xehWbjMQslDUqHP/VowR
DZxgBHh6hDH9a1fzx0YUigXJTgwP/FJ2oW2eTVYpFdy7kp+Uofl47FpDC1E9+TqVH
oyl/l1ZhajsXzPPDz7h1Ov7RPQCLAqJmfUZmgA86ISajuZBmDC3VU00aVY4P9t/2A
q4SOxlHBCcRse5ZpLCbDnhSyBAXsuGAVl6cuFeG90fZrxJ96QDcbu3PWL9ODHVH9
Rh2L7CJ4GJ0N5wPBurKKtFD038hhULmlqUWkY8vs/yQVpIgWn4kRV/PJQD8Fsop9
dz9LY1EZAknmDkpmQDZ6+ncjyQy6VM0Yll1aVrU3SAShFGOpY1ORi7NhuFWRZ2X+
NdhpBHG0wpQ0edz5gPSBXXrFkLDuXwJI+fZVIC4grr0lP7HwEzUjCTMwCfvn0Aa4

vqJkt/UldRdUp9N6hezO3uo04u8MpulAACYk8Bn7fQDU6w/lj7dVVTYBz1hBKxpu
hvRxwAVnlaFYGNsFYlPAtlIFQyhROBJDhQkPmC0m33rYs4UTTa1Zkmz7evtT9J7D
WBFBs63/GmS84/FTGMj0SbbD7DMW9luAHlXJc0KXyCTyWQKNppLlTrbpEltbBpib
+KIA5jEW7O9/VdK7VzjrE0qfNBdqGGgM9SiBiK4Ub5x6DuiagbRdO2frEr8Cw+7l
OlOf7O/0OspLS/GcPTuXX/qxxH8JQvwE/GJ3DyCcbsN8AhFZ8mktoYCGn0GL7w8Q
UHdsso3AvdB99ViegpJjAkpuuWnggPVR2VJF3vf8/fyXCmRcObNZ2rcrymOnjrY2
DSr1el5M1LjJRQkFodNToY7sBl+H5HTaykPeRI+tK8tPouAJJR2fC/76kP+wBC8o
RYdHOqc5c4H5yWJpmCwwIL9iFCRPz49y/1OY9fJgFGr9cKdnmfg+hvThkJlNIV9Z
NwyMuoFpbEqRRTWADHd8V1BQnmHS80jrau9+uJ37c5bt22Ap1cWdLGZQ9k0wpRMB
xWspwYlRc/c/v1+GMsa8eGQKCTrW+krqMbFl2+5lJnWlQwZ95QuTR584JUf4qpn2
QTkYRd7gAXBocyZSO/oG0fLXqcpWJRIsaGtu+c575sEx7y8zsPG+ylzvyY9zuElJ
yJl+A8mPgUZ9nDDsLR7BgSX4X7ZPGlczLwSxo1c9ouNtJz6YwUG4JndI15ESg0zY
l4oMvFf+gF8ecLM1P9t2qmUHdKHXyLObpyQV+9CbXN5CKHGmBrEeZtzOJkyzQTlJ
Y4CMFUPaT5FoQLWkUTvjOyRRhFPslgO4h05m31EyKRShCBq4vNEWwpNY1evT4fV0
VRgrKf/VCfYCrt8UshxdPbLIDgqAlc7g6olLjPNviT1wNpUZU1u/SAcbJM+oB6ZE
HPnG5yhMDHWVlJnDF2sl9AdDVl5rw/YrDBJlJK35ftSd56nA7vi2FTpjbwg5PM7jU
hlD0X15vml2ZH2yNFq4RDjDLwJbIT/gqlyatXaR4OZJScOd/M3btGd/HdZHVYVBf
+yr0vEjUdnu/ElZp5ut6alvxNk0q4Kyvu/VQ5bQAlRMSGhd+qPfPCdQRg1dmfk1r
yVzV1MjZ6wl5kWJbJY8lApfYlu8rUlbB1kyxDmrVxlclVuVb5glqHAR4+NthbNNn
gyFuEa8y4t1uWqRP7XtU1nBOwxJDJajZhkPzFdqOZmlllLG66exoRka5t//UejDlw
6vcPfe/GBDMLdKQWQdf5Vy7Gy3tBw55CJowUog5S9EsgSPMGQdaQtG0/G1QhS/VP
0s8cWyb/DEsP+1A4AXabEeHmv89XqFeuyIZ/s2EpJJ3eZykuuavgJvOGT+jh3lyP
2B9lorhYqvxEElHqwJKwkQojlKd0ZUlaemnVlQCs1fUbLKmT6dRZoRlEnNDNPGMS
AyjWv9NWWec2/8asp9XUta+9ST63oVQc2mxlEd7STjvelscTZfGnxqcTvLNrPTnv
gl+v9o2D3QfRuPB+oKv07IpHzbwz45ghhPOPHpE4rhxjS4/SeDMl2sU1nz5aUvMU
f7sp0jgosXOcHYYqakCSFWqkWejmfe34vY+8IrLuMeAPJLHU/nhyv8KKXwrwQJue
y8dwrdzDm1VWl9z7UTocDjfZy972ZkLk0+NFYr5K5EEAsP+l4rryD4+6tM2Qpb3p
UHgoDpw61tOlwLl6dLqcEXxE
=9q9L
-----END PGP MESSAGE-----

TIB.128.001.0728

From: John A Meinel
Date Sent: Saturday, 23 September 2006 06:48:42
Date Received: Saturday, 23 September 2006 06:55:07
To: eurokang@gmail.com
CC:
BCC:
Subject: [Bug 56549] Re: bzr revert fails when reverting from a subdirectorywhere an item has the same name as the subdirectory
No of Attachments: 0
Attachment Name: None

---

\*\* Changed in: bzr (upstream)
     Status: Fix Committed => Fix Released

--
bzr revert fails when reverting from a subdirectory where an item has the same name as the subdirectory
https://launchpad.net/bugs/56549

TIB.128.001.0747

From: kingos
Date Sent: Friday, 08 September 2006 12:16:28
Date Received: Friday, 08 September 2006 12:16:35
To: google-sparsehash
CC:
BCC:
Subject: Multi-dimension revisited
No of Attachments: 0
Attachment Name: None

---

HI, I saw in an earlier newsgroup posting that multidimensional
dense_hash_maps were not supported due to the POD restriction. Since
this has been removed (version 0.4?), I was hoping to use them.
However, I get the empty_key assertion on the inner dense_hash_map,
because I cannot call set_empty_key on the inner one.

Is this now possible or not?

If not, how can I use ext/hash_map from both windows and linux? I saw
all kinds of #ifdef's in the google headers for this, what is the
easiest way of doing it?

Cheers,
Andrew

---

You received this message because you are subscribed to the Google Groups "google-sparsehash" group.
To post to this group, send email to google-sparsehash@googlegroups.com
To unsubscribe from this group, send email to google-sparsehash-unsubscribe@googlegroups.com
For more options, visit this group at http://groups.google.com/group/google-sparsehash

From: Danny Bhandari
Date Sent: Friday, 09 June 2006 12:33:24
Date Received: Friday, 09 June 2006 12:33:24
To: nickbegg@gmail.com
CC:
BCC:
Subject: m5
No of Attachments: 0
Attachment Name: None

——BEGIN PGP MESSAGE——
Version: PGP Desktop 9.0.6 (Build 6060) - not licensed for commercial use:
www.pgp.com

qANQR1DBwU4DVKBYChiTI1oQB/9YJPY8nekil9eg14IOg1J2j5Tyj3IXdM8JbBmY
fsFISci70CmtaE8GKcLtSL7wWMfdpnKjhOutYwtNs/zQyABriDz4BkN1g/4RcPb0
NV9mYvl/R3prxgZqnzdkZ5YKqVy7VP+8ro5T+58P16J0rGaPznpKtN5r1jNAgHE5
hylAep3P0YnfF/q7dpH7sl+Gcmo0xrTHqQomKOTW9UW0qh66dQkS8HZtjTQK4aeS
LgnaMN0KW/56EtXj2gV2o4B4QmtfvEGxGfcQimkbXNhrHCwLmorpmvF4o1F4/mKo
A1DMed0q0V068h1pajIjZFflLHAl7xuLRYGzqyB9z21E54rKB/0Qf5Z5AxXnOUZw
34hRiqPq/ec0DftmcY6hBxd5btR94OmKghTIHfcTTKcGDaGZnLIUAb4haT1oFu7z
I2MkKkIkWQb260aZL6xl/YVEWPY7ZR0IcPxhLPp8vJhMhzLfwYbFHndGSnkdKo8o
CM7JOe7/F28+mpcFA8P3Ng7twPg7mugoTLITKkBXUidhvRyMesMrMo4AXelsASgM
pSmOeijW3zJDof+SNLThEVKjCxOSDRVYtf9+yTC33GXqnAB4Mta/W9K7nmaA/swi
6NjAtQl0j2Ma3jaiCE1md8jb541FDcGMwnBfr4Vx5GxQ03NKYv+FEqSDMxn22oX
j8ivbor50sDEAbIObgi1BD4FX038/8vmw25nILVZa1xEGxa6gby/ERKl2PytEbkV
QnSpwFv8TDFw9ze2a9muA4jsk78kia7pLVqtC0nEcdsL8ILUgCwWOMFY8/gAs7jw
Tox/X5ZH0fNXqWaGSbQs80pkLLlMHz/Y/F6oY3kqIQLFCDw0OXJ60/A70L/lwBD0
KLBZIBREUca4wWoImIZQsCqBMpGBerwIV85amv5OK69+El98l0+spdUlwDzfGr0K
J+QDFvGQ8LiUOa8LNEa4M3YqKKz8Bxcvwrp74zBmZh/KKwwE+RNYYXWgI487R0g7
WRr3Fjk3KmGI74Da7mv2IXnhDwKb3bGkJ1vrENMFejr9hCHmRLj4GzBDVX2GgDtx
2PZdK0csg3I4F0HpoHIsXuZbZwBhdunEXOSsC4bYqI7P0NGbQJbC6rNnelVAbi4d
9e/ivT1ohhQXJ8D+ho7/wm/AWEyLq3XyJV8FtV11ImPaxosGwEsfvc5/0CrYTj96
RoZ50KnXGR0DIRQsgA==
=EWxl
——END PGP MESSAGE——

TIB.158.001.0358

From: Danny Bhandari
Date Sent: Tuesday, 04 July 2006 13:51:05
Date Received: Tuesday, 04 July 2006 13:51:05
To:
CC: kinseyinc@hotmail.com; rottengarabaldi@gmail.com
BCC: Nick Begg; Campbell Norwood; Christian King; Glenn Williamson; Tim Berry
Subject: pgp key
No of Attachments: 0
Attachment Name: None

————————————————————————————————————

——BEGIN PGP MESSAGE——
Version: PGP Desktop 9.0.6 (Build 6060) - not licensed for commercial use:
www.pgp.com

qANQR1DBwEwD9HZcc5AFr5tBB/9kJurioJCiVu2APygANkK0AvLADJXa1rrc9WQQ
ZGqdj9sra2JkZzE02QrhY0JoHJwZxYxeWp7QTm6jcnf42l6e+wu24UKOJloCoGXR
gGKZjbsjwe9adgq/s2SyKlzWOlgeDO5FnG3NdklxZdAwDjCultma3DxK/Zs5UFl+
0W45MJZgm/FihvETKPA6SdXSQSnSl4bULYzzOi9CUDwMy9JRsLtJFY5he0W6Bkc8
8ecXR+k8hM5N7inaR6C0l25jZMo1vOsgzQzvTGJw09s7jm9xlG35y+4Shsjs+HGk
6MVHkz0p4QvvOzTu4fCT1HKTvJwHF3H8tiTuQbKrosm/r2GwcFOA1SgWAoYk5da
EAgAysTJlA4hV2WAQQ6GBPBritXrE8Yg9UB/HW3wWSH+NLa7xvftyXlt+8KfFGPpP
/kMBXO49NvKOEfU1ofMFbd2kbk++AEcq2BS44Un9/zUx2AqjOhYyRyi5HDBz8ux9
pclClMIWUhvxJwBLUAAAfetgbSjMinljpAK8pgYGJCQA0zFT2sXlrTSRmt/AaHgf
c2m5lt_dHv/8a09VMODbwyvRZwwdh1+Rmpez4KE53CZ+PBvKcu6WEnx3snhcOlp1W
Ze3rHMl0Af2b27ve6HJ909/CihllYq4XkD6g8llcTliN8gHFK0aGzQfyK7eE2g6M
QFH3CgUNUWnez5MXJ9A1GBy4lQgAsDLQ8qR78lOmFRNlwSw0cwOo9Vvmezk+eEOS
RCcmHFYxTTBQRBMYWmSnchyKZK/uPFUtOWB67o2B6TRFB48/NYWGl/3v5Xg/Yz+J
DpQzaKPa4ZWyPJxlrm9PMx3pgvAllc4MmDPgwkyG3n0bJ+rMGbEHJ4zJQyn9mMmZ
2AMBjK3G7dX5fnUWCmhEMVE01/oHv7nsmfWn0GPQgNvTLwvakQHyEAvimzl38oA3
t5Pt2eNLgcxKlBMMvsC9rbGSQltz3Z4S720MyRn4qATsXxrE9Domv5l2N6vf8tXU
ag5phAflOYG3qArL3pH9Bmc0xXpltvmZARo5Za1jRoQvpqE5aMHATAPJFu+lc+bo
dwElAllmbhg2FQSBOfL00KJlkfj7HwU3+cdiyMfyRrsS6rsdDDDx7fyX3GBxZen
mNxgll4aYaFVyHSxE9zkDQjDeO7np6fl4WDJevuXVYovibYfMGPZbHa41Wupx9imE
cesF3M13XyIPrOsPoY2mB05eQvy5QhhRtpD7VxNbgXXfDGmC9HqHmM9kMNHvHt3q
OTWMAqbPc0CFwWPpGjrnySVHzQn/jFjq6o9BXSapRRuHQStC2lhNPCoa+XUyTsbJ
dOMcj2bZkQ7v30KmUdV4lXL9O5BE6QZXwoVvj4gibZxhletI4gXQ/8wOeuujvxsp
feAxqWopJra/72ZUPmCObzgeTn7BwEwDdrQtllxV+T8BBl9lAdcqQ2HorlYw75ZS
ksR2K2VZr030Sl8oJmmc95Ol8+1Ey6Kn1WNWzrZlMJqZkncJ4A/JzitZCHwzVcv0
JPzYDNWDfTNR445hHe5DVw2Cb8lhWFea79Nn+awvZcGTQ9/WqD//3m8KKNpoJ8N+
MfQUqFoQT78vv8TavP5u76fGEzEREohTomatNBOM3mm6TL5dDMoE6lHaxKeWs57T
Ugs2e3luBQbYc9dfKGY6Ym0+opgsjAkeJkd8xxjLhfXvJ/6l6E9OFzoL5/TuP6Xx
DhG+PKSmudK/Bse9K58c8jqbvVuUA7f+xURTCScslFcRo1epL6dJISBnzo4ZkMs5
rjDKwcBMA1KjjAN5HkQaAQf/aovKqAzYvsqoj8QHfM3nls0qNqWBflVCbSw7RNT9
BUiuNocJO26svFl4JdsRc+s/C39wICKZ116lQedHCE9zwt6yjRH8M7DkgZ9OOTwz
k9pKnBzV1/+0Eml5yfaOsft21ToRjG7C6dk6bFUrQSnHgU6pfUqBvQPAp7KCH14+
xl15R0r6ylodWAKmlZc8N3E4xARxyM4dVpUb4AFv9Mi8cu9loXyu5l5TvouKDcR
Y9A7wS8oja/0Wry2QtkpBkrivEZpOalq8Wr7Q4z+dsWoLM9WfGbQ1SorgosgPq3s
GrYnNzf9+ulJmOvgucRdQa/W6Gw9FC2WllqPwKf2lDsSXcHATAOcPaxSJAeQhAEl
AMaEzrYqLCh9KPE1G6Exsq8csFjLjdjiKjNrKkPGkFakUV24D4IbLHthbDsE3NWg
W+k8lfN3wQlrJWdKOqj9YSqVRGDTzbqLgkwmv4wMObkZ0/xrA7Kv9Q+qU5XTj3Uz
hpUf7dCOgSOuok9EPO8Qz+49SwNyqczZBlhlC4agnWQadsDoMh3flQ+odCtnL6bhP
uOVt2o/+1U73nBKWya07nF3fMHfLZqVgXFMdMOWKbq3UVyHlyrHAFKrCPodiuHwCF
/9VxYZhUWU3lsVeRezC2nb/IHlhuNllQlYmnhgdUwClvlKF7lBzY/dBTAHmGVpFH
fVXFlatEYYFVnB3rMRts3l3BwEwDdEjigWnrYTYBB/9CgEafvu/vOWZh8eDdkv4H
NBIUBoZwe+pGy0bkqPYnEd9oJ8AhpcQmSh/CZOide4BZzZ225tz41YScdjZuL9ic
yjC9/MYfMC78jlXrbOwr4cT2gsobYp3cN7H5rPw1soxbOPl6Boud9O/Ubs9cxMHX

TIB.158.001.0359

SCy2CdUA+gVW07IV4wWeYAhLgqkel086LTjXPYilASRc15jZovUJVhWp/ncOSWyR
OCweCBWKvwyqeO6fXBbl78Axk42ctI86IETBAAZFeryt4+6clhJK+niqkhUcJVplu
0qAWCsYhQuGSr8aVJzzPV7MIsDP1MIEpICkFQ8f8kf0uNO9jO5dzzFKiVgHJn9AY
0sFJAbLiNaxp+ttWjVr2heQkuyhUcR1wlXMolRAxwHSo4LxNkR6EBipVJilse1gB
sz58pjjGTWrTt9HUIG6wECbliRoZEIvQK5zAWOLR86ewhDbqYrFyy36B1loylOml
X2yMqwmSoNVPMlsBg0SXIG4vp6ww/YEC5lfmfeYumeVqmxB7E7fu1mETr38V/wXk
Q/IZyoUQytnFA0CFfjfWH4BpQ9CobUyQYZEl5jqWdvHarWnZJaGYK3WejolJzZzd
c91X6eMpp8VmNNacPFR9cOC1aMTtMLrP93wVwa2sbB+Ji5tqC5Mg3R6cq3/Tobj0
pl5qdX7tZGCCzGmZvAQMpDZH5Blvu2FrOJSzZApAu61HSDHfYPnXJ2Cuowsp7wcW
iNoQ73YE9P5rvBt+RcPi0lASEghG39c31uQj8g350X+AogudPybabMT5pmQ3X+cf
NYcP8DnysyHZQb2y1oK94g4HpfxLSj/Da0laXUIQW2HaaAbl2B74ujn4hxOtVxm8
PnBJYQzo+su7CahWGBwdGmv5NUud6UAXIJJcTAVLwiTJ3uY4ex2Vr/FxIl79eCdi
9zPeFx495vviqnY8G9pH+hbkN3E+/wL+sv2UK0N903yfF0bBoMY2jUvfo/HpR8uZ
gqTEdpTjkJNixMvfkA4KlJIWj+W7v6l/iDOOw7ZFCjhIcV53QleDxSnJiol=
=I1WU
-----END PGP MESSAGE-----

EXHIBIT 4

# Freehills

Mallesons Stephen Jacques
Governor Phillip Tower
1 Farrer Place
SYDNEY NSW 2000

13 November 2009
Matter 81597947
By email

Attention: Mr Maurice Gonsalves and Mr James Lawrence

Dear Partners

## Tibra Trading Pty Ltd & Ors ats Optiver Australia Pty Ltd & Anor
## Federal Court of Australia Proceeding No. NSD 681/2009

We refer to the hearing on 16 November 2009.

We enclose short minutes of proposed orders. We note that the annexures to the short minutes have not been included. We will provide those annexures to you in due course.

Our clients still consider your clients' pleading to be deficient. However, in order to facilitate the efficient conduct of the proceeding and to avoid prolonged pleading disputes, our clients consider that the prompt provision of the Applicants' evidence will best assist in the understanding and progress of the case. For this reason, our clients will consent to continued confidential access to the Applicants' experts of Discovered Tibra Source Code for a defined period in order that your clients' evidence in chief can be prepared. We trust that this resolves your clients' application for interlocutory relief in relation to source code.

In relation to the application regarding the personal computers, as you are aware, our client does not consent to the orders sought in paragraphs 25 and 26 of the Application. As an alternative to the orders sought, we are instructed to propose that Mr King's computer be kept securely at our offices for as long as is required by the Court. This would alleviate your clients' apparent concern (as expressed in the affidavit of Mr Lawrence dated 28 July 2009) that the computer might be disposed of, misplaced, or that material on the computer may be deleted (although we note that this evidence was not admitted).

We have made enquiries of our clients as to the location of the remaining computers referred to in paragraphs 25 and 26 of the Application. We are instructed as follows.

- Mr Williamson no longer has in his possession, custody or power the home personal computer referred to in paragraph 12 of the Affidavit of Andrew King affirmed on 19 June 2009 in proceedings NSD 1116 of 2007. He disposed of the computer in approximately November 2007 by putting it in a rubbish bin at Thirroul, where he was living at the time.

- Mr Begg no longer has in his possession, custody or power the home personal computer referred to in schedule 2, page 5 of the Supplementary List of Documents in proceedings NSD 1116 of 2007 because he has given the computer away before the commencement of the preliminary discovery proceedings.

- Mr Tydeman no longer has in his possession, custody or power the personal computer referred to in paragraph 7(b) of the Affidavit of Andrew King affirmed on 19 June 2009 in proceedings NSD 1116 of 2007. He disposed of it (by

Doc 3399673.1

MLC Centre Martin Place Sydney NSW 2000 Australia
GPO Box 4227 Sydney NSW 2001 Australia
Sydney Melbourne Perth Brisbane Singapore

Telephone +61 2 9225 5000 Facsimile +61 2 9322 4000
www.freehills.com DX 361 Sydney
Correspondent offices in Hanoi Ho Chi Minh City Jakarta

## Freehills

putting it in a rubbish bin) in about August 2007 when he upgraded to a new system.

- Mr Muirhead no longer has in his possession, custody or power the personal computer referred to in paragraph 7(b) of the Affidavit of Andrew King affirmed on 19 June 2009 in proceedings NSD 1116 of 2007. He disposed of it (by taking it to the Whytes Gully waste disposal) in about March or April 2008 because it had developed a fault at the start of 2008.

In relation to those computers which are no longer in the possession, custody or power of the specified person, the orders sought by your clients at this time will have no practical effect. Accordingly, please let us know whether your client is agreeable to our clients' proposed course of action before the hearing on 16 November 2009.

Yours sincerely

**Sue Gilchrist**
Partner
Freehills

+61 2 9225 5221
+61 414 225 221
sue.gilchrist@freehills.com

**Campbell Thompson**
Partner
Freehills

+61 3 9288 1820
+61 439 950 960
campbell.thompson@freehills.com

**In the Federal Court of Australia**
**New South Wales District Registry**

No. NSD 681 of 2009

**Optiver Australia Pty Ltd & Anor**
Applicants

**Tibra Trading Pty Ltd & Ors**
Respondents

## Short minutes of order

**The Court orders by consent** that -

**Pleadings timetable**

1    The time for the Respondents to file and serve a defence be extended to 23 November 2009.

2    The Applicants file and serve any reply on or before 7 December 2009.

**Respondents' access to CA-6 and CA-8 of the Applicants' Statement of Nature of Case**

3    Order 2(b)(vi) of the Court orders of 16 October 2009 be vacated.

4    The Respondents and Justin Chau be permitted to have access to CA-6 and CA-8 of the Applicants' Statement of Nature of Case on the terms of the confidentiality regime in this proceeding as described in paragraph 5 below.

**Confidentiality regime**

5    The confidentiality regime in this proceeding be amended to the form set out at Annexure A (for the Applicants' legal representatives), Annexure B (for the Respondents' legal representatives), Annexure C (for any independent expert engaged by the Applicants), Annexure D (for any independent expert engaged by the Respondents) and Annexure E (for the Respondents and Justin Chau).

**Applicants' access to the 'Discovered Tibra Source Code' and evidence in chief**

6    Any independent experts engaged by the Applicants who have executed appropriate confidentiality undertakings in this proceeding have access to the Discovered Tibra Source Code (as defined in Annexure C to the Court orders of 12 August 2009) for a period of 1 month from 16 November 2009 to 16 December 2009 on the terms of the confidentiality regime in this proceeding, for the purpose of preparing evidence to be filed in accordance with order 8.

7    Any independent expert engaged by the Applicants is to return to the Applicants' solicitors all 'Tibra Confidential Documents' and 'Tibra Source Code' (as defined in the confidentiality undertaking at [Annexure C] on or before 16 December 2009.

8    The Applicants file and serve their evidence in chief by 30 January 2010.

Filed on behalf of Respondents by:
Freehills                                                     DX    361 Sydney
MLC Centre                                                    Tel   61 2 9225 5000
Martin Place                                                  Fax   61 2 9322 4000
SYDNEY NSW 2000                                               Ref   81597947:SMG:CPT

Freehills I NATP00257\3399638                                 Email: sue.gilchrist@freehills.com

**Other discovered material**

9       The Applicants' solicitors return to the Respondents' solicitors all material produced by the Respondents on preliminary discovery other than the Discovered Tibra Source Code on or before 17 November 2009.

**Personal computers sought by the Applicants**

10      The personal computers referred to in paragraphs 4 and 5 of Annexure C of the Court orders of 12 August 2009, in so far as those personal computers remain in the possession, custody or control of the relevant individual, be delivered into the custody of the Respondents' solicitors until the determination of these proceedings or further order.

**Directions hearing**

11      The matter be set down for a further directions hearing on [*the first available date after 30 January 2010.*]

**Other**

12      Costs be reserved.

13      Liberty to apply on 2 days' notice.


Date: 16 November 2009


_____          _____
Solicitor for the Applicants                          Solicitor for the Respondents

EXHIBIT 5

# Freehills

Mallesons Stephen Jacques
Governor Phillip Tower
1 Farrer Place
SYDNEY NSW 2000

8 January 2010
Matter 81597947
By email

Attention: Mr Maurice Gonsalves and Mr James Lawrence

Dear Partners

**Tibra Trading Pty Ltd & Ors ats Optiver Australia Pty Ltd & Anor
Federal Court of Australia Proceeding No. NSD 681/2009**

We refer to your letter dated 23 December 2009 enquiring about the disposal of the USB
stick referred to in our letter of 22 December 2009.

We do not agree that the USB stick as such is "clearly highly relevant to the subject
matter of these proceedings". The source code repository, a copy of which was contained
on the USB stick, is relevant to the proceedings. You have been provided with a copy of
the repository. We are instructed that the USB stick contained no other documents of any
conceivable relevance to the proceedings.

We are instructed that Mr Williamson disposed of the USB stick by placing it in a bin at
the Westfield shopping centre in Bondi Junction.

Yours sincerely

Sue Gilchrist
Partner
Freehills

+61 2 9225 5221
+61 414 225 221
sue.gilchrist@freehills.com

**Campbell Thompson**
Partner
Freehills

+61 3 9288 1820
+61 439 950 960
campbell.thompson@freehills.com

Doc 3802033.3

MLC Centre Martin Place Sydney NSW 2000 Australia
GPO Box 4227 Sydney NSW 2001 Australia
Sydney Melbourne Perth Brisbane Singapore

Telephone +61 2 9225 5000  Facsimile +61 2 9322 4000
www.freehills.com  DX 361 Sydney
Correspondent offices in Hanoi Ho Chi Minh City Jakarta

EXHIBIT 6

**Things To Do :**

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

1 Year Business Plan

Trader Manual

Plan of all Potential Strategies

Program Development – Specs & Coding

Final Questions for Tax Expert

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████

█████████████████

**By...**

*17 July (-7w)*

Finalize Capital Numbers
Finalize plan for fit-out                        _____
Begin getting expressions of interest for alternative capital vehicle
Sign Lease

*24 July (-6w)*

Begin Fit-out
Order bulk of Hardware
Finalize Korean, Japan, Singapore brokers
Confirm all Foreign Tax issues with Tax Lawyer

Order Korean, Japan, Singapore data lines
Ensure Orc has or is in the process of providing links to said brokers
Have following documentation drawn up : Employee contract, IP Warranties, Alt. Capital
Vehicle Prospectus

*31 July (-5w)*

Have following documentation drawn up : Heads Of Agreement, Shareholder Certificates
Hold presentations for alternative capital vehicle

*7 August (-4w)*
Finalize Junior Traders

*14 August (-3w)*

Finalize support staff
Applications close for Alternative capital vehicle
Allocations made for alternative capital vehicle
Trading Capital to be lodged with Fortis
Data lines in place for HK, Korea

*21 August (-2w)*

Alt Capital Vehicle to be lodged with Fortis
Finish Certification of Orc HKSE link

*28 August (-1w)*

Heads of Agreement to be signed
Employment contracts to be signed
IP Warranties to be signed
Shareholder certificates allocated
Erase all emails, sent items, deleted items, Skype chats, files etc from hard drive. Copy
all existing files into new files. Fill up or blast hard drive. Destroy all paper
correspondence. Discontinue PGP

*4 Sep (0)*

First trade for Oz, HK & Korea
Junior Trader's start

*11 Sep (+1w)*

*18 Sep (+2w)*

First trade for Japan

*25 Sep (+3w)*

*2 Oct (+4w)*

*9 Oct (+5w)*

First auto-trade : Korea, Oz, HK, Japan
First mass quoting via own system : Oz, HK, Japan

**Non-competes end :**

Glenn – 28th July
Nick – 28th Aug
Marty – 1st Sep
Andrew – 1st Sep
Christian – 1st Sep or 15th Sep
Campbell – 8th Sep or 22nd Sep
Clint – 17th Sep
Kinsey – 2nd Sep

EXHIBIT 7

From: Danny Bhandari
Date Sent: Monday, 07 August 2006 11:13:38
Date Received: Monday, 07 August 2006 11:13:38
To: Campbell Norwood; christianking81@gmail.com; roohif@gmail.com; raska27@gmail.com
CC:
BCC:
Subject: RE: Admin
No of Attachments: 0
Attachment Name: None

-----BEGIN PGP MESSAGE-----
Version: PGP Desktop 9.0.6 (Build 6060) - not licensed for commercial use:
www.pgp.com

qANQR1DBwEwDG3t30I01cA8BB/0ffzekMdpe1efwlwjCsDe/YrPR5zvlmXJNK9FJ
lvSKZdeSyUODgt7iy2UV6fjQD53MrlNT0l/ZXU2OO3Vz8BCb4eySDqV181Zl3NU9
LgPp+DrrxtxCBkHLYZl91iSNu8s92P/kJbwJW0ODWT0w9BYkQWgpXzPiNa5TuXcmT
dQ6CXltGakQqxcTHpenepA2wL5HfLFxjS+0HFvO4drwfsYrMA8M9Q+Is4jaXQdF+
0Ml+poqn3+mxogwynGfuFCl5dBafEVvUR5wTwsIkaWcQTAFRUYAUOuUblHA2Qowd
s/BC4zqgWDokr0Cdnrgb3/6PKGQuf9UIRM+JPnk/p3OeN30YwcBMA/R2XHOQBa+S
AQf+OS6CWlDsNav3OOiw1qTh7JIP7wLPCnVyOxMvdS+9ZZFhqRqEXG2Xjx5Mt7wD
8mC6Ayw+PIHtJ7ezCRPBTaddYDC074I5fCqf3wY21Fg5KOoxpKiCli0Eslnoh0sX
lXzd4hY/jZkGgid67zarNEYzE8aOGhfmRDuss2PRCKHc5fYuxTamZG5lQR0e5KAG
7ROdgBqqI4K4tajHGTa5xQjExfMu1QWnYdC0HxNljFQkabo4xswtpM8nUqgmGo2N
xHg8VWUPSU2C27R3SZE14Vj4QvzRc+BaBoj5nednuuweq8qelxHBYzURETTJ8B5r
EIrWF9Hb+++kvXvi0Yig2lObrsHBTgNUoFgKGJOXWhAH/AsVF2IFGW0002Y0RpNl
1yqYfLcaKF+bb5aZiolJus/A2VspdlS3MN5IapOf8Yldm9F8YgKVAjt101XmIF4G
uCr5MLvsqf6w5Qk8KzX+VaR/cUJmrcWlPKxhbTyFze5pf2pe+9Qq+/wDCBy20lV
PWISZKVu+nw+qwZ2m7GDT3QaWu/r8l8EVmvcaspwdLfEXwU/gOkxrldli7XUGzJ
4r2iSIAXGgOy4u/DXt62gJo4Q3Xl5CFDlSPlsvq/f+x/QqRNr/8xfAGVn7q88T7T
hzj9zGyNLCa69Bx/aHDfXGJuMsGGoFNVhoFbW55ZJSaJZgXRNX5v/PGPdpGOojNb
3o0H/lNzpgMkN1muebufTE+h1Mwf5NhCJ8xkFwBYb5n75vV2bc8DpzzZ72yttZMU
h9njYlqf77rQKNh6ysxq2dT552Pz4GRrK6TS1n4wZd4EzUYbsP522tE/mu80OnLo
NFyY08GXl3zzd8BNnPDvTJjaVvi50rqXCigva0WX9OlGHHJElcddHD/nEcSm/R+r
sXj1FBSBh7x1FmhkAmHZjEGQM9wK0tgYN5lOjgyT0c1kquUf87f1qJ+CxUWpQAU
CONy1clqyQVTVqJbn5TuZ1wD+0+2ZM6+xtaWag4/8DHs9IuMS+01Te/oXjL7qwhu
iHhflx4X1v2bFyXD48OGbojXkqDBwEwDyRbvpXPm6HcBB/0ep4OkPKIEOSE4cqEF
clt0z+YSgcfEnbEPhb7/ZOA2ZysL2v4hDGFwx04/MJ2bFslsdSBexUplrQw7IH5U
zc2Ynmi1Pk3MDblhA4LTThh1PdNhjtStF6LbWM7RKGADsibfYLS+fL50RpdfSw53
Vm7ci35z6ucJGWVROdPvxHlW9TXxyxRMBfOXHbhoYtlP6sPq423Y+7WlfbWeqjrU
4I4clvakd3G8Ha9f2JWFRF9SUaRZeUdMlNWce/k5/VaKzj9tginAeCPDbDKC8
rS2xpQJ0zzqZnr2cZkySVxwN+g/iInKXW4vW6wGBkwC/Yh/D1fy/NuG9zJ+PEJlU
MK64wcBMA3a0LZZcVlk/AQf/YkS90AVysleoOdPqJo17joplP5AF7o0egH3ADU0o
0gDHL7bcLKpLPxiZQbnsaxtcVgAbW4JiZo5C0C4GwHt58x8m/d5cHslvW8fJexh0
rcrCi9/y2BcjyGSaPDlvtvlDl1kxq1SBw0oHBVzCzs2Rj5SWJhUVZM4Y2QyOP2+K
tiLyJqMaupjnn56spIrnCv725TyztSfDwQbXlKlopUKvk73FkM++4hjcCGxu5SVTM
ReeJPrGNqf0KWGNWllNef4t2hIDeCWRS4oHmWqfSTByu7P55al4P0E5pDNMhfrcz
WRJy5Txb8PQy1myxGd4pfF5+42RT5Glbz8uh0PO/GU4qHsHATANSo4wDeR5EGgEH
/13EB2LtsXyOx4LVVfu+Otk6BX7i85boR8VB1Il5hhygZZ/3v8rm07Gh2AMGMpJd
0riLNOu6pleNJfeqqc7cFP7yNFBQVpDriEBlve99Jl/falpkMlo1xEZfLoW7BOMo
Zhiy2bNRUA/lQ1BKKAJpiz0WWGCDR0OOeqtrl7lNl02TAOB9xZs1lX1ku/oNLbb
MDYqVDbGJpA1ZctEgifVV1pRRmjYbtYvt1AQ0P0Dp5TL1QC0vlfEBAOroyeYUOpP
uzGkVt9ka1Zl1B4cYD0A1RovDkQrHngXBEd0P46kxO0zSczH3m/UZm0rEOUmzo5J
Sz04O4EU/YY4PBKeEMj+al3BwEwDnD2sUowHklQBCACazfshRHAAOXlyeAllztX
fmleyKRFsMjoVs2FWOIUZGFJ+rNRHxQuRNGeTVMcc7wFzsyN9fb553o5d7kAsMeF
h1W/nsc44l8r8xAhsmGkhD5+yY1oV/PZb3Dt5XxC4j8nLnk/N0Azl3OySpPmrkRV

TIB.158.001.0158

9HlirxFLpi1+AcKypnaj9giq5gFwR7YJRy3rrE17e/c2UCD1nslyRpgBX3t6LFtQ
DUAsmxi2kRjDQWApXzmL9x0zXub056limhlMyaSXm7qq8FDRLyVdTyNeSHBk3l20
swuJQIHMCsy7FCFnGvh6Hs9pLwTW4l03vr8spiO9aSlDhQYobYfDsK2bdsQObu+5
wcBMA3Rl4oFq62E2AQf9HAmpR5ND19lEvTsfWgxhJqTWcg6A2nObZHX5nYZEklA7
XNOLm70HBpPBdRt/x+Ir7SRGYNrfIHfZEHhqNh9/r+Zf+lLPZ+n3pxxD8GTbhmprk
pBVMG9/gJ4kZ051o8py2QcLJ4ifUV5yJoAoRYEHpUbfeHpgRiGdljmAfCH1NJ5Q4
ZoQquu0qC1olbaCQjQP2K3HH8n2EeZ8LcAKFJeE8MFs0750QFVQAwr7dljjFU/E0
enmDWyLPO4plIMf+l8Or1SZBo1qqFeAAB2YQNjNEgG5GuSDzCxMJptjzPrZcOOYl
Cp3Oj02USaNB2RkSV1pELABceJbQVllchdRN/h2e2dLBwwGsdMZ94V0LHemNHJOE
n/AjleOf+fq12bfmM52JU1ZAlR8TPlsJFKbYNxMSbVArF3TRCRRoWw3D9PLeMlLa
DwyhdajlfW7oPFHWUWqmnKk8KRA9rveJ9NcSl1DreMyiAj2on1wE3ellfLdHONH8
ZjmKJlWXZdFgfcAhBjRGNoh7Z/mYulu/nDwl1f5vLoWwa70ZRmZfAZRqHDoLv9Bx
2Nc7sWVNlqLEBj4vjQpXsAdQHkkGx0kkcl/AMlUWDvDNf+FcfpMaGJJTl++cTKRl
59mHLkwq4RY/Ks0xTycEyX3AV6MusoTZckpL7BN59dLT4J/XYQJbfRJSFSGOdV/J
ANaSoa2EbhpD/r875sba/g2slN2Tlv0414Fhp9Cq1X0cbgycFJPbxyPlnAPE6sm6
JbQYp04ha4V2zHVVWrB8Um4em0dN/4NE8c6joXjgmu4YMwSLtEmd3UXzrndGmSgP
S8lqNfkldKM4bmsHBnlhEFExpnjoWKps8U/3KtScY5zhFlgklPnU0K1vEm7lOTD8
5hreCExokzdFg4QTGTo4PTHRxC6eWV5VV5nqNs8lB+89FY5fsXxotFfdvlBylHvl
/HZSuJyy2bDsDy2+PFmsljQwBlA/kxwC/k884jJLJudLY8yMayAs+M8r4JHLvOA3
iC+2QE5SWSAe6YBS7plhCehFbggfPYilV7rL0UM3EJkyZ2Qmtrtc5NLpA3wSn0p8
yk+YnRKpM82aLE81oJ+m+vTrj12yrejTzdhBFxOPBK6VDNZen2K/sYavOadVQUfv
leokT0uXDOXrTlMb64H/M/JaX0Kq95wY7/yL/lhKnrYl6+4nsv3n35E7E9KYFVek
Jz53klc=
=06GJ
-----END PGP MESSAGE-----

EXHIBIT 8

# Freehills

Mallesons Stephen Jaques
Governor Phillip Tower
1 Farrer Place
SYDNEY NSW 2000

28 June 2010
Matter 81597947
By hand

Attention: Mr Maurice Gonsalves and Mr James Lawrence

Dear Partners

## Tibra Trading Pty Ltd & Ors ats Optiver Australia Pty Ltd & Anor
## Federal Court of Australia Proceeding No. NSD 681/2009

Pursuant to order 1 of the orders made by Justice Emmett on 21 May 2010 and the Electronic Exchange Protocol agreed between the parties, enclosed is the verified list of documents of the Respondents (the List).

At this stage, however, the verifying affidavit of the 11th respondent has been signed but has not been sworn before a relevant officer. We expect this to occur later this week.

We intend to file the List tomorrow. We anticipate that the Registry may seek your clients' consent in writing, in the same way as the Registry sought our clients' consent to your clients filing the Further Amended Statement of Claim out of time. Accordingly, please let us know in writing whether your clients consent to this List being filed on Tuesday 29 June 2010.

We make the following comments on the List:

1       In relation to the personal computers identified in our letter of 13 November 2009, with the exception of Andrew King's computer, we are not in a position to know whether or not those computers contain (or formerly contained) relevant documents on this discovery (which were not duplicates of documents uploaded onto the initial Tibra repository in September 2006), because the computers are no longer in our clients' possession, custody or power. Accordingly, we have not included those computers in Schedule 2.

2       Sub-category 5.1.12 covers, insofar as they relate to the November 2006 Tibra Programs, "all references such as text books and papers used in the development of the source code". We understand this sub-category to be directed at seeking material, in the nature of reference documents, specifically used in connection with the development of the Tibra code base up to and including 15 November 2006. We do not understand the sub-category as extending, for example, to any document imparting information which formed part of the general stock of knowledge of the code developers during the relevant period. Nor do we read it as seeking, for example, any publicly accessible material (e.g. on the Internet) pertaining to aspects of code development that may have been read or used by one or more of the developers of the Tibra Programs during the relevant period.

3       Sub-category 5.1.13 covers, insofar as they relate to the November 2006 Tibra Programs, "all source code or pseudo code provided by external parties such

Doc 5347321.9

MLC Centre Martin Place Sydney NSW 2000 Australia
GPO Box 4227 Sydney NSW 2001 Australia
Sydney Melbourne Perth Brisbane Singapore

Telephone +61 2 9225 5000 Facsimile +61 2 9322 4000
www.freehills.com DX 361 Sydney
Correspondent offices in Hanoi Ho Chi Minh City Jakarta

**Freehills**

as Orc and ASX that were not checked into the repository". We do not understand precisely what this sub-category is designed to capture. We are instructed that the repository contains all source code necessary to build the Tibra Programs, apart from the following external libraries:

- The C++ Standard Library;
- Boost C++ Libraries; and
- The libuuid library.

The above external libraries are not part of the repository for the Tibra Programs, and we do not read sub-category 5.1.13 as requiring the Respondents to produce them. In any case, those libraries are publicly available and the Respondents would expect any company involved in C++ development to have copies of those libraries.

4   We have located a number of emails from the relevant date range which are protected by PGP encryption. We have not identified any means of decrypting those emails. Accordingly we are not in a position to ascertain whether or not any of those emails are discoverable. If any of those emails is discoverable, it is identified in paragraph 9 of Schedule 2 of the List.

We will provide you with the electronic export of documents on the List tomorrow.

Yours sincerely

Sue Gilchrist
Partner
Freehills

+61 2 9225 5221
+61 414 225 221
sue.gilchrist@freehills.com

Campbell Thompson
Partner
Freehills

+61 3 9288 1820
+61 439 950 960
campbell.thompson@freehills.com

EXHIBIT 9

# Freehills

King & Wood Mallesons
Governor Phillip Tower
1 Farrer Place
SYDNEY NSW 2000
Attention: Mr Maurice Gonsalves and Mr James Lawrence

6 June 2012
Matter 81597947
By email

Dear Partners

**Tibra Trading Pty Ltd & Ors ats Optiver Australia Pty Ltd & Anor
Federal Court of Australia Proceeding No. NSD 681/2009**

We refer to the further discovery provided by our client 28 October 2011.

As you are aware, that discovery contained copies of encrypted emails. Decryption of
these emails requires a copy of the individual recipient/sender's private key and
passphrase. The only existing record of a private key belonging to any of the respondents
is the private key of Mr Andrew King. This key is contained on his old personal computer
which your clients' expert, Mr Carson, has inspected.

Prior to providing further discovery to your clients, Mr King provided several possible
passphrases in an attempt to decrypt the email communications. Unfortunately, our
attempts to decrypt the emails with those passphrases failed.

After reading your clients' opening submissions, Mr King requested that we provide him
with his private key so that he could make another attempt to decrypt the emails.
Yesterday, Mr King was successfully able to identify his passphrase. Pursuant to our
clients' ongoing discovery obligations, we attach a copy of each email that has been
decrypted. The passphrase ultimately used to decrypt the emails was originally provided
by Mr King in July 2010 however, due to a transcription error at the time it was provided
(by Tibra's in-house counsel at that time), attempts to decrypt the emails failed and the
passphrase was rejected.

Yours sincerely

Sue Gilchrist
Partner
Freehills

+61 2 9225 5221
+61 414 225 221
sue.gilchrist@freehills.com

Doc 15505369.1

MLC Centre Martin Place Sydney NSW 2000 Australia
GPO Box 4227 Sydney NSW 2001 Australia

Sydney Melbourne Perth Brisbane Singapore

Telephone +61 2 9225 5000 Facsimile +61 2 9322 4000
www.freehills.com DX 361 Sydney

Associated offices in Jakarta Beijing Shanghai Hanoi Ho Chi Minh City

TTB.133.001.0147

From: Danny Bhandari
Date Sent: Tuesday, 15 August 2006 17:08:09
Date Received: Tuesday, 15 August 2006 17:08:29
To: Campbell Norwood; Christian King; Glenn Williamson; Tim Berry; Clint Maddock; Kinsey Cotton; Andrew
King; Nick Begg;
kingos@optushome.com.au
CC:
BCC:
Subject: structure

I don't know if this has been discussed recently, but if you don't have a family trust
structure in place etc, you should do something now, especially if you are borrowing
money for this caper...if you are unsure about this, let me know...maybe we can put
together a checklist...but I would move on this cos the HOA and shareholding stuff
should be dated 1 sep for all shareholders...
Danny

TIB.159.003.0003

From: Glenn Williamson
Date Sent: Tuesday, 01 August 2006 16:34:25
Date Received: Tuesday, 01 August 2006 15:34:25
To: Nick Begg; Andrew King; Tim Berry; Danny Bhandari
CC:
BCC:
Subject: James Tydeman
No of Attachments: 1
Attachment Name: James Tydeman Resume.doc

This is the guy I interviewed today. Overall impression is that he seems to know what he's talking about, and he is comfortable with the idea of a market link. His experience according to his resume is pretty impressive - lots of C++, C# and Delphi.

My only worry is personality - his nature is slightly effeminate .. the way he speaks is a little "interesting" .. very slight physical speech impediment. Maybe he was nervous or something.

In terms of skills tho, I think he's pretty good - so what I was thinking is offering him $80k, and explain that this is a
"probationary" salary for 6 months - at that time we'll review his performance and probably push him either up to 90k, or if he's really good: into the $100k + bono club.

Objections?

   gleNN

EXHIBIT 10

IN THE FEDERAL COURT OF AUSTRALIA
NEW SOUTH WALES DISTRICT REGISTRY

NSD 1116 of 2007

FEDERAL COURT OF AUSTRALIA
N.S.W. DISTRICT REGISTRY
FILED / RECEIVED

2 3 FEB 2009

(M)

Fee paid $..............................

OPTIVER AUSTRALIA PTY LTD
                                        Applicant

TIBRA TRADING PTY LTD
                                        First Respondent

TIBRA CAPITAL PTY LTD
                                        Second Respondent

TIBRA CAPITAL MANAGEMENT PTY LTD
                                        Third Respondent

TIBRA GLOBAL SERVICES PTY LTD
                                        Fourth Respondent

DINESH BHANDARI
                                        Fifth Respondent

GLENN WILLIAMSON
                                        Sixth Respondent

TIMOTHY BERRY
                                        Seventh Respondent

ANDREW KING
                                        Eighth Respondent

KINSEY COTTON
                                        Ninth Respondent

ORDER
(Order 36)

JUDGE:            Tamberlin J

DATE OF ORDER:   19 February 2009

WHERE MADE:      Sydney

---

Filed on behalf of the Applicant by:
**MALLESONS STEPHEN JAQUES**
Level 61 Governor Phillip Tower
1 Farrer Place
Sydney NSW 2000

DX 113 Sydney
T+61 2 9296 2000
F+61 2 9296 3999
Ref: MCG:JL
Matter no: 02-5171-5988

9804953_1 optiver – final order – 19 feb.doc

1

**THE COURT ORDERS THAT:**

1    The Respondents and each of them give verified discovery to the Applicant within 28 days of the making of this Order of the following Documents in their possession, custody or power, including all versions thereof (whether current, archived, deleted or otherwise):

    (a)    all source code and object code for Optiver Programs;

    (b)    any historical source code repository containing source code for computer programs which perform any of the Functions;

    (c)    all source code for computer programs which perform any of the Functions;

    (d)    all source code for:

        (i)    the prototype autotrader allegedly developed by the First Respondent between June 2006 and mid-November 2006 (as referred to in paragraph 60 of the letter from McCabe Terrill to Mallesons dated 2 October 2007); and

        (ii)    the computer programs developed by iMantras India (Private) Limited for the First Respondent pursuant to the agreement between that company and the First Respondent dated 26 June 2006 (as referred to in the letter from McCabe Terrill to Mallesons dated 2 October 2007).

    (e)    all Documents relating to the development by the Respondents or any of them of computer programs which perform any of the Functions (including without limitation all technical and functional specifications and other documents and computer programs provided by the Respondents or any of them to iMantras India (Private) Limited);

    (f)    all source code revision logs relating to the development by the Respondents or any of them of computer programs which perform any of the Functions;

    (g)    all Documents evidencing communications between one or more of the Respondents, or between one or more of the Respondents and any third party, in relation to the Optiver Programs (including, without limitation, communications relating to the location of any Optiver Programs); and

    (h)    all Documents evidencing communications between one or more of the Respondents, or between one or more of the Respondents and any third party, in relation to the source or origin of computer programs that perform any of the Functions.

2 The Applicant notify the Respondents in writing of the identity of the independent computer experts who it is proposed will inspect the documents produced pursuant to order 1 above at least 14 days prior to such inspection.

3 The First to Ninth Respondents produce to the solicitors for the Applicant for inspection, within 28 days of the making of this order, all Documents falling within Order 1 (including, in the case of Documents falling within Orders 1(a) to (d) and (f), in electronically searchable form).

4 Access to:

 (a) computer source code discovered pursuant to Order 1; and

 (b) any Documents in respect of which a claim for confidentiality is made,

be limited, until further order, to the solicitors for the Applicant and to independent computer experts notified in writing to the Respondents pursuant to order 2 above, each of whom have signed a confidentiality undertaking in the form annexed to these Short Minutes of Order and marked "A".

5 If the Applicant commences proceedings in this Court against a Respondent for final relief relating to or arising from any of the subject matter of this preliminary discovery application dated 19 June 2007 ("Substantive Proceedings") not later than 90 days after that Respondent has made available for inspection all Documents discovered pursuant to these Orders:

 (a) the Applicant's and that Respondent's costs of and incidental to the hearings on 3 October 2007, 30 November 2007, 11 December 2008 and 18 December 2008; and

 (b) that Respondent's costs of complying with these orders;

be treated as costs of the Substantive Proceedings as between the Applicant and that Respondent.

6 If the Applicant does not commence Substantive Proceedings against a Respondent not later than 90 days after that Respondent has made available for inspection all Documents discovered pursuant to these Orders, the Applicant pay that Respondent's costs:

 (a) of and incidental to the hearings on 3 October 2007, 30 November 2007, 11 December 2008 and 18 December 2008; and

 (b) of complying with these orders.

7 The parties have liberty to apply on three days' notice (including, in the case of the Applicant, liberty to apply for further discovery).

8 If the Applicant does not commence Substantive Proceedings against a Respondent not later than 90 days after that Respondent has made available for inspection all Documents discovered pursuant to these Orders, then the Applicant is to deliver up to that Respondent's solicitors all Documents (and any copies thereof) discovered by that Respondent in accordance with these Orders.

[In these Orders:

"Documents" has the meaning in Order 1 rule 4 of the Federal Court Rules.

"Functions" means any of the following functions:

 (a) auto-trading (including hitting good trades and placing hedge orders);

 (b) providing a connection to a trading exchange over a network;

 (c) receiving market data (including stock prices and trades);

 (d) facilitating the placement of orders on a market;

 (e) updating trading parameters and data in the Orc trading system;

 (f) provision of calculated values using formulas based on financial mathematics;

 (g) estimation, management and presentation of risk in trading derivatives;

 (h) reconciliation of clearing company and in-house trading data; and

 (i) data logging, network socket/thread management.

"Optiver Programs" means the Applicant's computer programs, known as CATS, FI, GMI, Market Link, CubClient, ASX-ITS GMI Channel, SFE GMI Channel, FI System Tester, PosCheck, OP View, Snappy/Croc, Rho and Basket Trader.

Date that entry is stamped:  2 3 FEB 2009

                  District Registrar

TO TIBRA TRADING PTY LTD, TIBRA CAPITAL PTY LTD,
TIBRA CAPITAL MANAGEMENT PTY LTD AND TIBRA GLOBAL SERVICES PTY LTD

TAKE NOTICE THAT IF YOU DISOBEY ORDERS 1 OR 3 OF THESE ORDERS OR IF YOU FAIL TO COMPLY WITH ANY OF THOSE ORDERS WITHIN THE TIME SPECIFIED YOU WILL BE LIABLE TO SEQUESTRATION OF PROPERTY.

TO DINESH BHANDARI, GLENN WILLIAMSON, TIMOTHY BERRY, ANDREW KING
AND KINSEY COTTON

TAKE NOTICE THAT IF YOU DISOBEY ORDERS 1 OR 3 OF THESE ORDERS OR IF YOU
FAIL TO COMPLY WITH ANY OF THOSE ORDERS WITHIN THE TIME SPECIFIED YOU
WILL BE LIABLE TO IMPRISONMENT OR SEQUESTRATION OF PROPERTY.



"A"

IN THE FEDERAL COURT OF AUSTRALIA
NEW SOUTH WALES DISTRICT REGISTRY                    NSD1116 of 2007

OPTIVER AUSTRALIA PTY LTD
(ACN 077 364 366)
Applicant

TIBRA TRADING PTY LTD
(ACN 117 881 759) & ORS
Respondents

## CONFIDENTIALITY UNDERTAKING

I, *[NAME, OCCUPATION, ADDRESS]*, undertake to the Court and to each of the Respondents in relation to:

(a)     documents discovered by the Respondents pursuant to the order of Tamberlin J made on 19 February 2009 which are identified by the Respondents as confidential (the **"Confidential Documents"**); and

(b)     all source code discovered by the Respondents pursuant to the order of Tamberlin J made on 19 February 2009 (the **"Source Code"**).

that:

1       I will not disclose the Confidential Documents or Source Code or any substance, content or part thereof, nor will I disclose the contents of any expert report prepared in relation to the Confidential Documents or Source Code, to any other person other than an authorised Person, unless such disclosure is expressly authorised by the Respondents in writing or ordered by the Court in these proceedings.

2       I will keep the Source Code and Confidential Documents confidential at all times.

3       I will keep any notes which I make of the Source Code and Confidential Documents confidential at all times and will not disclose those notes directly or indirectly to any person other than an Authorised Person, unless such disclosure is expressly authorised by the Respondents or ordered by the Court in these proceedings.

4       I will use the Source Code and Confidential Documents only for the purposes of providing *[expert or legal, as applicable]* advice on issues arising in these proceedings.

---

Filed on behalf of the Applicant by:
**MALLESONS STEPHEN JAQUES**
Level 61 Governor Phillip Tower
1 Farrer Place
Sydney NSW 2000

DX 113 Sydney
T+61 2 9296 2000
F+61 2 9296 3999
Ref: MCG:JL
Matter no: 02-5171-5988

9804953_1 optiver - final order - 19 feb.doc                                    1

5 I will not reproduce the Source Code and the Confidential Documents (other than creating a maximum of two copies of the Confidential Documents solely for the use of the Applicant's legal representatives) in any way or in any form except that if I am engaged by the Applicant as an independent expert for the purposes of providing advice on issues arising in these proceedings I may:

(a) print in hard copy form one copy of any Source Code provided to me in electronic form;

(b) reproduce onto the hard disk drive of one secure, non-networked computer system operated and controlled by me any Source Code provided to me in electronic form; and

(c) make notes of the Source Code for the purpose of providing advice as set out in paragraph 4 above.

6 When I am not using or handling the Source Code or Confidential Documents, I will store them and any copies of them made in accordance with paragraph 5 above (including any copy of the Source Code in electronic form) under lock and key such that it is accessible only by me.

7 If I am engaged by the Applicant as an independent expert for the purposes of providing advice on issues arising in these proceedings, I will deliver up to the Applicant's legal representatives all Confidential Documents, working notes, working papers, copies of any Confidential Documents (including Source Code), drafts, notes and all other documents relating to or generated during my engagement by the Applicant upon either:

(a) being requested to do so by the Applicant's legal representatives; or

(b) by no later than 90 days from the date on which the Respondents make available for inspection all Documents discovered pursuant to these Orders.

In this undertaking, the term "**Authorised Person**" means:

(a) any solicitor acting for the Applicant who has signed a Confidentiality Undertaking in the form of this undertaking;

(b) any independent expert engaged by the Applicant in relation to this proceeding whose identity is disclosed to the Respondents prior to any disclosure being made and who has signed a Confidentiality Undertaking in the form of this undertaking; and

(c) any other person whom the Respondents have advised me in writing is an Authorised Person.

**Dated:**

............................................................ ............................................................

Signature of person giving undertaking Signature of witness

............................................................ ............................................................

Print name Print name

## Order NOT Entered

IN THE FEDERAL COURT OF AUSTRALIA

NEW SOUTH WALES DISTRICT REGISTRY

GENERAL DIVISION

No:  (P)NSD681/2009

OPTIVER AUSTRALIA PTY LTD ACN 077 364 366
First Applicant

OPTIVER TRADING PTY LTD ACN 123 177 971
Second Applicant

TIBRA TRADING PTY LTD ACN 117 881 759
First Respondent

TIBRA CAPITAL PTY LTD ACN 120 313 160
Second Respondent

TIBRA INVESTMENT MANAGEMENT LTD ACN 124 402 160
Third Respondent

TIBRA GLOBAL SERVICES PTY LTD ACN 120 338 445
Fourth Respondent

DINESH BHANDARI
Fifth Respondent

GLENN WILLIAMSON
Sixth Respondent

TIMOTHY BERRY
Seventh Respondent

ANDREW KING
Eighth Respondent

KINSEY COTTON
Ninth Respondent

MARTIN NICKOLAS
Tenth Respondent

NICHOLAS BEGG
Eleventh Respondent

### ORDER

**JUDGE:**          Justice Emmett

**DATE OF ORDER:**        21 May 2010

**WHERE MADE:**           Sydney


**THE COURT ORDERS THAT:**

1.  The respondents within 30 days give discovery of all documents falling within the categories of discovery annexed to this motion and marked "A" by:

    (a)  serving a list in accordance with Order 15 rule 6; and

    (b)  producing to the applicants' solicitors the documents identified in the list which are in the possession, custody or power of the respondents or any of them.

2.  The applicants complete their expert evidence in chief on liability by filing and serving any further affidavits or reports from Professor Zobel and Drs Harris and Dart by 30 September 2010.

3.  The applicants' solicitors, counsel and any independent experts engaged by the applicants who have executed appropriate confidentiality undertakings in this proceeding have continued access to the Discovered Tibra Source Code (as defined in Annexure C to the Court orders of 12 August 2009), and any source code discovered pursuant to Order 1 above, on the terms of the confidentiality regime in this proceeding until 30 September 2010.

4.  The respondents' solicitors notify the applicants' solicitors on or before 26 May 2010 as to whether they consent, as part of the discovery within categories 1, 2 and 3, to undertake forensic retrieval processes to seek to recover from the personal computer of Andrew King currently in the possession of the Respondents' solicitors, any material falling within categories 1, 2, 3.

5.  Any independent expert engaged by the applicants is to return to the applicants' solicitors all "Tibra Confidential Documents" and "Tibra Source Code" on or before 30 September 2010.

6.  The matter be listed for directions on 22 October 2010.

7.    Costs be reserved.


Date that entry is stamped:



                                                    Deputy District Registrar

## "A"

# CATEGORIES FOR DISCOVERY BY THE RESPONDENTS

1.   Any historical source code repository containing source code for computer programs which perform any of the Functions, namely, the Tibra Programs.

2.   All source code for computer programs which perform any of the Functions, namely, the Tibra Programs.

3.   All source code for the prototype autotrader allegedly developed by the First Respondent between June 2006 and mid-November 2006 (as referred to in paragraph 60 of the letter from McCabe Terrill to Mallesons dated 2 October 2007).

4.   All Documents relating to the development by the Respondents of the Tibra Programs in the form in which the Tibra Programs existed on or before 15 November 2006 ("the November 2006 Tibra Programs") (including without limitation all technical and functional specifications and other documents and all computer programs provided by the Respondents or any of them to iMantras India (Private) Limited).

5.   To the extent (if any) not covered by Category 4 above, the following documents in so far as they relate to the November 2006 Tibra Programs:

   5.1.1   README files and similar .TXT files;

   5.1.2   top-level design diagrams;

   5.1.3   detailed interface documentation for the various subsystems;

   5.1.4   business plans and descriptions of how the software relates to the business plan;

   5.1.5   project plans and Gantt charts;

   5.1.6   acceptance testing plans for each subsystem;

   5.1.7   technical specifications for individual procedures and functions;

   5.1.8   all Documents describing any third party material incorporated in the Tibra Programs;

   5.1.9   all Documents describing the interfaces of external systems with which the Tibra Programs must interact;

   5.1.10   all Documents describing the version or versions of operating systems, compilers and libraries which are required to compile the Tibra Programs as at November 2006;

   5.1.11   all requirements, design, implementation, test, configuration management and process documents that were not checked into the repository;

5.1.12  all references such as text books and papers used in the development of the source code; and

5.1.13  all source code or pseudo code provided by external parties such as Orc and the ASX that were not checked into the repository.

"Documents" has the meaning in Order 1 rule 4 of the Federal Court Rules.

"Functions" means any of the following functions:

auto-trading (including hitting good trades and placing hedge orders);

providing a connection to a trading exchange over a network;

receiving market data (including stock prices and trades);

facilitating the placement of orders on a market;

updating trading parameters and data in the Orc trading system;

provision of calculated values using formulas based on financial mathematics;

estimation, management and presentation of risk in trading derivatives;

reconciliation of clearing company and in-house trading data; and

data logging, network socket/thread management.

"Tibra Programs" means the Tibra Programs as defined in the Further Amended Statement of Claim filed 9 November 2009.

Order NOT Entered

IN THE FEDERAL COURT OF AUSTRALIA
NEW SOUTH WALES DISTRICT REGISTRY
GENERAL DIVISION

No: (P)NSD681/2009

OPTIVER AUSTRALIA PTY LTD ACN 077 364 366
First Applicant

OPTIVER TRADING PTY LTD ACN 123 177 971
Second Applicant

TIBRA TRADING PTY LTD ACN 117 881 759
First Respondent

TIBRA CAPITAL PTY LTD ACN 120 313 160
Second Respondent

TIBRA INVESTMENT MANAGEMENT LTD ACN 124 402 160
Third Respondent

TIBRA GLOBAL SERVICES PTY LTD ACN 120 338 445
Fourth Respondent

DINESH BHANDARI
Fifth Respondent

GLENN WILLIAMSON
Sixth Respondent

TIMOTHY BERRY
Seventh Respondent

ANDREW KING
Eighth Respondent

KINSEY COTTON
Ninth Respondent

MARTIN NICKOLAS
Tenth Respondent

NICHOLAS BEGG
Eleventh Respondent

## ORDER

JUDGE:            Justice Emmett

Prepared in the New South Wales District Registry, Federal Court Of Australia, Level 17, Law Courts Building, Queen's Square,
SYDNEY NSW 2000, Telephone 02 9230 8567.

**DATE OF ORDER:**      15 July 2011

**WHERE MADE:**      Sydney

**THE COURT ORDERS THAT:**

1.  The time for the respondents to file and serve their lay evidence on liability be extended to Friday, 15 July 2011.

2.  The time for the respondents to file and serve their expert evidence on liability be extended to Friday, 16 September 2011.

3.  By Monday, 29 July 2011, each party serve on the other party their proposed categories of documents for discovery.

4.  The parties produce copies of documents in any agreed categories by 28 October 2011.

5.  The matter be listed for argument in respect of any discovery categories that are not agreed before a Judge of the Court on a date to be fixed following consultation with the Associate to Emmett J.

6.  Professor Zobel and Dr Harris have access to all "Tibra Confidential Documents" and "Tibra Source Code" on the terms of their previously executed confidentiality undertakings until 24 February 2012.

7.  The applicants file and serve any lay and expert evidence in reply by Friday, 24 February 2012.

8.  The trial be set down for a period of 8 weeks, commencing on 4 June 2012.

9.  The matter be listed for directions at 9.30am on 2 March 2012.

10. Costs in relation to the proceeding generally be reserved.

Date that entry is stamped:

Deputy District Registrar

Prepared in the New South Wales District Registry, Federal Court Of Australia, Level 17, Law Courts Building, Queen's Square, SYDNEY NSW 2000, Telephone 02 9230 8567.

Order NOT Entered

No:  (P)NSD681/2009

Federal Court of Australia

District Registry: New South Wales

Division: General

**OPTIVER AUSTRALIA PTY LTD** and another named in the schedule
Applicant

**TIBRA TRADING PTY LTD** and others named in the schedule
Respondent

## ORDER

**JUDGE:**              Justice Rares

**DATE OF ORDER:**      14 June 2012

**WHERE MADE:**         Sydney

**THE COURT ORDERS THAT:**

1.  The respondents give discovery of:

    (a) the fifth respondent's private key or keys for the PGP encryption,

    (b) all documents that evidence, refer to, or tend to show that any of the substantive
        steps set out in the document headed "Things to Do:" appearing behind tab 17 of
        Ex JNL-18 were carried out, on or about the times specified in that document or
        within the period from 17 July to 10 October 2006,

    (c) the documents that ought to have been discovered pursuant to the orders for
        discovery made on 21 May 2010 and 15 July 2011, to the extent that they have not
        already done so, contained on or in all relevant employees' local drives, private
        drives or C drives, at any material time, on the computer system of any one or
        more of the first, second, third or fourth respondents.

2.  The first, second, third and fourth respondents together or separately  and each of the
    individual respondents separately prepare an up to date part 3 of their respective lists
    of documents that identifies each encrypted or formerly encrypted email document
    and the date and circumstances in which it ceased to be in its or his possession,
    custody or power.

Prepared in the New South Wales District Registry, Federal Court Of Australia, Level 17, Law Courts Building, Queen's Square,
SYDNEY NSW 2000, Telephone 02 9230 8567.

3.  The respondents file and serve a verified supplementary list of documents in accordance with orders 1 and 2 on or before 19 June 2012.

4.  The respondents have liberty to apply if there are difficulties in complying with these orders.

5.  The interlocutory application stand over until 2:15 pm on 20 June 2012.

Date that entry is stamped:

Deputy District Registrar

Schedule

No: (P)NSD681/2009

Federal Court of Australia

District Registry: New South Wales

Division: General

**OPTIVER AUSTRALIA PTY LTD**

| | |
|---|---|
| Second Applicant: | OPTIVER TRADING PTY LTD ACN 123 177 971 |
| Second Respondent: | TIBRA CAPITAL PTY LTD ACN 120 313 160 |
| Third Respondent: | TIBRA INVESTMENT MANAGEMENT LTD ACN 124 402 160 |
| Fourth Respondent: | TIBRA GLOBAL SERVICES PTY LTD ACN 120 338 445 |
| Fifth Respondent: | DINESH BHANDARI |
| Sixth Respondent: | GLENN WILLIAMSON |
| Seventh Respondent: | TIMOTHY BERRY |
| Eighth Respondent: | ANDREW KING |
| Ninth Respondent: | KINSEY COTTON |
| Tenth Respondent: | MARTIN NICKOLAS |
| Eleventh Respondent: | NICHOLAS BEGG |