BOBBY A. GHAJAR (SBN 198718)
Email: bobby.ghajar@pillsburylaw.com
MARCUS D. PETERSON (SBN 265339)
Email: marcus.peterson@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile No.: (213) 629-1033

Attorneys for Plaintiff
OPTIVER AUSTRALIA PTY LTD. & ANOR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTIVER AUSTRALIA PTY LTD. & ANOR., <br><br> Plaintiff, <br><br> vs. <br><br> TIBRA TRADING PTY LTD. & ORS., <br><br> Defendant. | Case No. C-12-80242-EJD(PSG) <br> Miscellaneous <br><br> **OPPOSITION TO TIBRA TRADING PYT LTD.'S MOTION TO QUASH SUBPOENA TO GOOGLE, INC.** <br><br> Honorable Edward J. Davila <br> District Judge <br><br> Honorable Paul S. Grewal <br> Magistrate Judge <br><br> Hearing Date: Dec. 18, 2012 <br> Time: 10:00 AM <br> Courtroom: 5 – 4th Floor |

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

On October 10, 2012, Optiver Australia Pty. Ltd. ("Optiver") filed a request for judicial assistance to serve a subpoena to produce documents on Google, Inc. Dkt. 1. Tibra Trading Pty. Ltd. ("TIbra") did not file any response or opposition to that request. This Court granted that request on October 12, 2012. Dkt. 6. The subpoena sought limited information pertaining to email accounts owned by principals of Tibra, against whom Optiver has brought claims in the Federal Court of Australia. The request was necessitated by Tibra's efforts to thwart Optiver's discovery in the Australia matter – in fact, Optiver is concerned that Tibra destroyed documents to prevent discovery. In that regard, Tibra's Motion to Quash the Subpoena is a further effort to prevent Optiver from obtaining information that will assist in proving its claims in the Australia action.

Tibra makes several arguments in support of its Motion to Quash, all of which are misplaced. First, Optiver tailored its requests for information so as to conform with the Stored Communications Act ("SCA"), 18 U.S.C. §2701, *et seq.* Indeed, Tibra does not contest the appropriateness of the requests except for the request for the subject lines of emails. Dkt. 11 at 7-8. Tibra cites to only one distinguishable case for the proposition that email subject lines constitute "content" for the purposes of the SCA. That out-of-circuit district court decision, *In re United States for an Order Authorizing the Use of a Pen Register & Trap*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005), is distinguishable as it relates to use of telephone monitoring devices in a criminal invetigation and analyzes those facts under a different chapter and section of the United States Code (18 U.S.C. §3121 *et seq.*), and not the SCA. Tibra cites to no authority addressing the questions of whether the subject matter of emails falls within the "content" prohibitions of the SCA.

In an attempt to obfuscate the issues, Tibra claims, incorrectly, that Optiver seeks email attachments. But as the Court will observe, and the language of Optiver's requests makes clear, Optiver seeks only data about email attachments, not the attachments themselves. Thus, this argument fails.

Tibra also argues, without authority, that narrowing the request to only encompass emails that contain the terms "PGP" or "Optiver" indicates that Optiver seeks the contents of those communications. This is incorrect. As Tibra well knows, it is impossible for Optiver to access the contents of any communication that has been encrypted through PGP without the proper encryption key and pass phrase. As such, the notion that obtaining data about encrypted emails gives Optiver access to the content of those emails is factually incorrect. Additionally, emails that contain the term "Optiver" are more likely to relate to the claims in the Australia action than emails that do not contain such a term. The request is therefore properly tailored and does not seek impermissible information.

Finally, Tibra states that Optiver seeks the data for an improper purpose – to obtain the content of emails. Again, Tibra misses the point. Tibra has prevented Optiver from discovering email communications that are related to the claims in the Australia action, and appears to have improperly destroyed evidence. Optiver therefore seeks data regarding these email accounts to potentially support its arguments in the Federal Court of Australia that Tibra has intentionally destroyed evidence that indicates it stole Optiver's source code when creating its own trading platform. It will eventually be up to the Federal Court of Australia to determine whether the data provided by Google substantiates Optiver's concerns that Tibra destroyed relevant evidence. As such, it is improper for Tibra to attempt to prevent Google from responding to the subpoena, and to attempt to paint Optiver as concocting a scheme to obtain information to which it is not entitled. The Court should maintain its prior Order, and deny Tibra's Motion to Quash.

## II. FACTUAL BACKGROUND

The relevant factual background was described in the Memorandum of Points and Authorities in Support of Optiver's Request for Judicial Assistance. *See.* Dkt. 2 at 2-3. In summary, Optiver and Tibra are engaged in litigation in the Federal Court of Australia. Dkt. 3 at ¶¶2-7. During the litigation, Optiver sought additional discovery, including emails between the individual parties that were potentially related to the Optiver source code or otherwise related to the issues in the litigation. *Id.* at ¶9. Tibra produced a limited number

of documents but refused to produce key emails, and later suggested that emails and other documents were unavailable or had been destroyed. *Id.* at ¶¶9-10, 15-18. One of the emails produced led Optiver to believe that Tibra employees had engaged in a calculated plan to destroy documents, including a stated plan to "Erase all emails, sent items, deleted items, Skype chats, files etc from hard drive. Copy all existing files into new files. Fill up or blast hard drive. Destroy all paper correspondence. Discontinue PGP." *Id.* at ¶19. PGP is en encryption system that prevents anyone without the encryption key and associated pass phrase from reading an email. *Id.* at 22-23. Tibra's failure to provide both the encryption keys and pass phrases has made it impossible for Optiver to access the information contained in a large number of emails. *Id.* In light of the foregoing, the Federal Court of Australia determined that Tibra's responses were inadequate and ordered further discovery. The Australian Court's order specifically contemplates Optiver seeking leave of a United States court to allow Optiver to obtain discovery from Google, Inc. *Id.* at 29-30.

### III. OPTIVER'S SUBPOENA DOES NOT VIOLATE THE STORED COMMUNICATIONS ACT

#### A. Legal Standard

Optiver does not dispute the cases cited by Tibra holding that the SCA prevents Google from disclosing the content of communications, including emails. *See* Dkt. 11 at 5-6. In fact, Optiver acknowledged the SCA and cases applying it to email service providers in its Request for Judicial Assistance. *See* Dkt. 2 at 5-6.

Nonetheless, the information sought by Optiver is not prohibited by the SCA and should be produced by Google. Tibra has not discussed the cases cited by Optiver in its original request holding that an email service provider can produce data relating to communications. *See* Dkt. 2 at 6; *Beluga Shipping GMBH & Co. v. Suzlon Energy Ltd.*, 2010 WL 3749279 at *5 (N.D. Cal. 2010) (Google ordered to produce documents relating to emails); *Mintz v. Mark Bartelstein & Assoc.,* 2012 WL 355351 at *3-4 (C.D. Cal. 2012) ("subscriber information" not prohibited by the SCA).

**B. Tibra's Motion to Quash Acknowledges that the Information Sought Does Not Violate the Stored Communications Act**

Optiver's subpoena to Google, Inc. was tailored so as not to run afoul of the SCA. It does not request the content of any electronic communications, but merely seeks subscriber data relating to specific email accounts specified in the subpoena. *See* Dkt. 4, Ex. A. As to the specific types of use data sought by Optiver (recipient(s), sender, subject, date sent, date received, date read, and date deleted), Tibra only objects that that "subject" of emails is "content" for the purposes of the SCA.[1] *See* Dkt. 11 at 7-8.

In support of its argument that this Court should quash the subpoena on this basis, Tibra cites to only one out-of-circuit case that is completely distinguishable. *In re United States for an Order Authorizing the Use of a Pen Register & Trap*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005) concerns the use of a "pen register or trap and trace device," which is a device originally used to record information regarding telephone calls made to or from a specific telephone. There, the government sought permission to use those devices on email accounts in a pending criminal investigation. The Court denied the request, analyzing it under a different chapter and section of the United States Code (18 U.S.C. §3121 *et seq.*), which is actually entitled "Pen Register or Trap and Trace Device" and not the SCA. The case is therefore inapplicable to the present question of whether Optiver can subpoena data that includes the subject of emails. Tibra cites to no authority addressing whether the "subject" of emails falls within the "content" portion of the SCA.

---

[1] To the extent the Court agrees with Tibra that the "subject" of an email encompasses "content," the rest of the subpoena should not be quashed and Tibra has not requested that the Court prevent Google from providing data regarding when and to whom an email was sent, and when it was received, read, and deleted. In addition to the cases cited by Optiver on this issue (*see* Dkt. 2 at 6), one of the sources cited by Tibra also supports this conclusion. *See* Dkt. 11-4, Ex. 3 at 122 (PDF page 9 or 10) (Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations, Chapter 3 (The Stored Communications Act), at page 122, listing permissible "records…pertaining to a subscriber," under the SCA, including account usage logs; email addresses; date, time, and internet addresses of sites accessed, etc.).

1    To the contrary, the information in the subject line of an email, by itself, does not
2    provide Optiver with the content of any communication. Without the body of the email, the
3    subject line is often nonsensical, vague, or devoid of any information. Optiver is aware of
4    no authority holding otherwise. As such, the Court should deny Tibra's motion to quash on
5    this ground and allow the subpoena to Google to stand as it was approved and served.[2]

6    **C. Optiver is Not Seeking "Identification of Email Attachments"**

7    Tibra argues, incorrectly, that Optiver seeks "email attachments sent or received by
8    the listed email accounts." This is simply untrue. As the requests state, they seek
9    "Documents sufficient to identify the recipients(s), sender, subject, date sent, date received,
10   date read, and date deleted of emails, email attachments, or Google Talk messages. Dkt. 4,
11   Ex. A at 11 (emphasis added). The request clearly seeks data *about* emails, email
12   attachments, and Google Talk messages, without requesting content related to those three
13   items. The request likewise does not seek file names of attachments. The Court should
14   deny Tibra's Motion to Quash on this ground.

15   **D. Optiver's Subpoena Seeks Disclosure of Data Related to Emails**
16   **Containing the Terms "PGP" or "Optiver" to Ensure the Requests**
17   **are Reasonably Calculated to Lead to the Discovery of Admissible**
18   **Evidence**

19   Optiver limited the scope of Request No. 1 of its subpoena to Google to data related
20   to emails containing the terms "PGP" or "Optiver." As explained above, "PGP" is an
21   encryption system that protects the content of an email unless the proper encryption key and
22   pass phase are used. Emails that reference "Optiver" were included in the subpoena
23   because those emails more likely to relate to the subject matter of the Australia action –
24   specifically Optiver's allegations that Tibra stole proprietary software code from Optiver.

---

[2] Tibra's concern regarding potentially privileged documents is misplaced. *See* Dkt. 11 at 2 (fn. 1). Because Optiver seeks only information relating to communications, the contents of any privileged communication will not be disclosed.

1  The purpose of including those two terms in the request was to limit the requests to
2  ensure that they are reasonably calculated to lead to the discovery of admissible evidence.
3  *See* Fed. R. Civ. P. §26(b)(1); *Mailhoit v. Home Depot, U.S.A., Inc.*, 2012 WL 3939063 at
4  *5 (C.D. Cal. 2012) ("communications 'between Plaintiff and any current or former Home
5  Depot employees, or which in any way refer ... to her employment at Home Depot or this
6  lawsuit,' adequately places Plaintiff on notice of the materials to be produced and is
7  reasonably calculated to lead to the discovery of admissible evidence."). Here, Optiver
8  limited the emails in scope to ensure that the requests are narrowly tailored and only seek
9  data regarding emails that are relevant to Optiver's claims or reasonably calculated to lead
10 to the discovery of admissible evidence.

11 Tibra, on the other hand, argues that the attempt to narrow the requests indicates that
12 Optiver seeks the content of emails. Tibra cites to no authority holding that such a
13 limitation is an improper attempt to reach the "content" of communications. This argument
14 is also unsupported by the facts. Tibra is well-aware that Optiver cannot access the content
15 of any communication encrypted by "PGP." Data regarding emails so encrypted cannot
16 provide Optiver with any information regarding the content of those emails. Likewise, data
17 concerning emails that relate to "Optiver" does not provide Optiver with any notion as to
18 the content of those emails – it merely provides the Federal Court of Australia with
19 sufficient information to accept that the emails are relevant to Optiver's claims.

20 For these reasons, the Court should deny Tibra's Motion on this ground.

21 **E. Optiver Did Not Serve the Subpoena for an Improper Purpose**

22 The Federal Court of Australia **granted** Optiver's request to seek discovery in the
23 United States because Tibra thwarted Optiver's discovery in Australia and potentially
24 destroyed discoverable documents. Dkt. 2 at 2-3.

25 Optiver sought to subpoena documents from Google in accordance with the ruling
26 of the Federal Court of Australia. Optiver also sought to tailor its requests to comply with
27 the Fed. R. Civ. P. and the SCA.

28

Tibra's argument that Optiver seeks data relating to emails in order to obtain the content of those emails is an attempt to improperly paint Optiver's efforts as a scheme to obtain information to which it is not entitled. This is false, and Tibra provides no evidence to support its claim. Moreover, the argument is unfounded because Optiver does not have the mechanism to obtain the content of the emails, even if it obtains the data it seeks. This Court will not grant Optiver the ability to seek the content of any communications, nor will Google produce the content of those communications. As such, Tibra's improper attempt to discredit Optiver is a red herring.

### IV. CONCLUSION

For the foregoing reasons, Optiver respectfully requests the Court deny Tibra's Motion to Quash.

Dated: November 21, 2012.          Respectfully Submitted,

BOBBY A. GHAJAR
MARCUS D. PETERSON
PILLSBURY WINTHROP SHAW PITTMAN LLP


By: _____/s/ Bobby A. Ghajar_____
Bobby A. Ghajar
Marcus D. Peterson
Attorneys for Plaintiff
OPTIVER AUSTRALIA PTY LTD. & ANOR.